**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JACQUELYN B. N'JAI,          )
                                  )
            Plaintiff,        )    Civil Action No. 13-1212
                                  )
      v.                    )    Judge Nora Barry Fischer
                                  )
US ENVIRONMENTAL PROTECTION   )
AGENCY, ANNIE HOYT, GARY BENTZ,   )
CONNIE BENTZ, and C.A. BENTZ LLP,   )
                                  )
            Defendants.    )

## <u>MEMORANDUM OPINION</u>

From July 2008 through July 2012, Plaintiff Jacquelyn B. N'Jai rented an apartment located in the city of Pittsburgh and owned by Gary and Connie Bentz. In 2011 and 2012, a dispute developed between Plaintiff and the Bentzes regarding the conditions of the apartment. In particular, Plaintiff developed concerns that she was being exposed to lead-based paint and mold contamination. Plaintiff registered a complaint with the U.S. Environmental Protection Agency ("EPA") but was unsatisfied with the Agency's response to the situation. She subsequently commenced this litigation, naming as Defendants the Bentzes, their real estate partnership, the EPA, and Annie Hoyt,[1] an EPA official associated with Plaintiff's administrative case. Plaintiff's *pro se* complaint asserts claims for negligence and negligent infliction of emotional distress, alleged violations of the Freedom of Information Act, 5 U.S.C. § 552, and the

---

[1] Plaintiff's complaint originally designated Defendant Hoyt (inaccurately) as "Annie Holt." (*See* Docket No. 1.) Pursuant to the Court's Order entered on February 21, 2014 [Docket No. 38], the docket was officially amended to reflect the correct spelling of Defendant Hoyt's name.

Administrative Procedures Act, 5 U.S.C. §§ 701-706, and the alleged violation of her federal constitutional rights.[2]

Presently pending before the Court is a motion filed by the EPA and Hoyt (the "Federal Defendants") to dismiss the complaint or, in the alternative, for summary judgment (Docket No. 43). For the reasons that follow, the Federal Defendants' motion will be granted.

## I. Procedural and Factual Background[3]

From July of 2008 through July 31, 2012, Plaintiff resided in an apartment located at 226 East End Avenue in Pittsburgh. The subject property is owned by Defendants Gary and Connie Bentz. (Second Amended Complaint ("SAC") [ECF No. 11] at "Jurisdiction" ¶ 2; *id.* at "Count One" ¶¶ 1, 3, 8.)

Plaintiff claims that, prior to July 2012, a broken drainpipe at the apartment caused severe water damage to the foundation of the kitchen and living room areas, resulting in mold growth on the interior walls. (SAC, "Count One" ¶¶ 5-7.) Despite her repeated complaints about these problems, the situation remained unabated from 2011 through June 2012. (*Id.*)

On or about July 24, 2012, as Plaintiff was arranging to move out of the apartment, Defendant Gary Bentz arrived unannounced with another individual and requested entry in order to perform renovations. (SAC, "Count One" ¶¶ 8, 11.) The two men then began removing mold and what Plaintiff claims was lead-based paint from the walls of her apartment while she was still present. (*Id.* at ¶ 11.) The individual assisting Mr. Bentz lacked any indication that he was certified or licensed. (*Id.*) In the process of these renovations, dust from the scrapings covered

---

[2] The Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 and § 1367.

[3] The following averments are taken from Plaintiff's Second Amended Complaint, which is the operative pleading in this case. For present purposes, the Court will assume the truth of Plaintiff's well-pled factual averments.

Plaintiff's food, appliances, and furniture and remained on the kitchen and living room floors for over an hour. (*Id*. at ¶¶ 12, 13.)

Plaintiff informed the two men that she was allergic to dust and demanded that they cease their activities until she could leave the apartment, but they refused. (SAC, "Count One" ¶16.) Plaintiff then contacted her attorney, who spoke with Mr. Bentz and told him to cease and desist. (*Id*. at ¶ 17.) In retaliation, Mr. Bentz swept remnants of the scrapings onto a vent, causing the dust to become airborne. (*Id*. at ¶¶ 18-19.) Plaintiff contacted the EPA's emergency hotline during this time and was allegedly informed that Mr. Bentz's actions were in violation of federal environmental law. (*Id*. at ¶¶ 24-25, 27.) Plaintiff moved out of the apartment a week later, on July 31, 2012. (*Id*. at ¶ 28.)

Plaintiff claims that, after her phone call to the EPA, the Bentzes began to retaliate against her in various ways, such as going in and out of her apartment without permission, giving keys to other tenants to do the same, showing up unannounced at the apartment to harass her, making defamatory statements about her to various individuals, and refusing to return her security deposit. (SAC, "Count One" ¶¶ 33-38.) When Plaintiff filed a state court action against other tenants who were harassing her and damaging her property, the Bentzes testified untruthfully against her, stating that her complaint to the EPA was unfounded and that her decision to wear a dust mask showed that she was mentally ill. (*Id*. at ¶¶ 32, 44-46.) When Plaintiff complained about an unremediated sewage problem and other issues having to do with the property, the Bentzes falsely attributed the problems to Plaintiff and accused her of being "nasty." (*Id*. at ¶¶ 36, 39-40, 42; SAC, "Count Two" ¶ 59.)

Plaintiff avers that she was exposed to contaminated dust from approximately July 24 through July 31, 2012, when she moved out of the apartment. (SAC, "Count Five" ¶ 92.) As a

result of her exposure, Plaintiff experienced numerous symptoms, such as severe cramping and spasms, burning eyes, nose bleeds, itching, hair loss, gagging, coughing, and impaired cognitive functioning. (SAC, "Count One" ¶¶ 21-22; *id*. at "Count Five" ¶¶ 93-101, 104-06.) After moving out of the apartment, Plaintiff had to discard certain furniture, clothing, and other property that had been damaged by the dust. She placed her remaining belongings in storage. (SAC, "Count One" ¶ 29; *id*. at "Count Five" ¶¶ 102-03.) She stayed in a hotel, and then with her daughter, until moving into another apartment on August 15, 2012. (SAC, "Count One" ¶ 29; *id*. at "Count Five" ¶ 102.) During this time she incurred expenses totaling over $2,000.00. (SAC, "Count Five" ¶ 102.)

From July 2012 through 2013, Plaintiff was in contact with Mark Samolis, an inspector with the EPA, concerning her complaint against the Bentzes, and she supplied the Agency with certain evidence concerning the incident. (SAC, "Count One" ¶¶ 28, 30.) Plaintiff sought protection from the EPA against possible acts of retaliation by the Bentzes; however, she was informed by Defendant Hoyt that there were no additional remedies for EPA retaliation, and Hoyt therefore "refused to tack … any other issues" onto the Agency's investigation of the Bentzes. (SAC, "Count Three" ¶¶ 62-63.)

Plaintiff sought information from the EPA under the Freedom of Information Act ("FOIA") concerning the Agency's investigation. (SAC, "Count Three" ¶ 64.) Although Plaintiff had been told by someone at "EPA FOIA" that Samolis would inform her about the results of his inspection, Samolis and Hoyt refused to give Plaintiff any information. (*Id*. at ¶¶ 66, 67.) They claimed the information was secret and that only Hoyt (not Samolis) would know the outcome of the Agency's investigation. (*Id*. at ¶¶ 67-68.) Samolis informed Plaintiff that all inquiries about her administrative complaint had to be made with Hoyt. (*Id*. at ¶ 69.) However,

Hoyt allegedly refused to cooperate or provide any administrative relief to Plaintiff. (*Id.* at ¶ 70.) Unsatisfied, Plaintiff notified Hoyt's superiors about her situation and was informed that she would be given information about the outcome of her administrative complaint against the Bentzes. (*Id.* at ¶ 71.) Over one year later, she still had not heard anything. (*Id.* at ¶ 72.) Plaintiff notified the EPA on or about June 10, 2013 that she intended to file suit within 30 to 60 days. (*Id.* at ¶ 73.) Despite this notice, she received no administrative relief. (*Id.* at ¶ 74.)

Based on the foregoing allegations, Plaintiff commenced this litigation. She filed her Second Amended Complaint, the operative pleading in this case, on October 23, 2013. In that pleading (Docket No. 11), Plaintiff asserts five causes of action – specifically: negligence (Count 1); negligent infliction of emotional distress (Count 2); alleged violations of the Freedom of Information Act (Count 3); a *Bivens* action[4] premised on the alleged violation of Plaintiff's federal constitutional rights (Count 4); and alleged violations of the Administrative Procedures Act (Count 5).

On March 13, 2014, the Federal Defendants filed the pending motion to dismiss or, in the alternative, for summary judgment (Docket No. 43). Plaintiff filed her initial response to the motion (Docket No. 50) on April 2, 2014. Defendants filed their reply brief in support of their motion (Docket No. 54) on April 16, 2014. Plaintiff filed a document styled as a "motion and/or brief in sur-reply" (Docket No. 56) on April 30, 2014. The issues raised by the Defendants have been adequately joined and are now ripe for disposition.

---

[4] *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

## II. Standard of Review

A. <u>Motion to Dismiss</u>

In their motion, the Federal Defendants invoke both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) addresses claims over which the court lacks subject matter jurisdiction, while Rule 12(b)(6) addresses claims that fail to state a cognizable cause of action.

*1. Rule 12(b)(1)*

When a district court analyzes a motion under Rule 12(b)(1), "its first task is to classify the [defendant's] motion as either a factual attack or a facial attack." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id*. (alterations in the original) (*citing U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)).

A court reviewing a facial attack "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 347 (3d Cir. 2012) (*quoting Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). In addition, the court may consider matters of public record. *See Medici v. Pocono Mountain Sch. Dist.*, Civ. No. 09–cv–2344, 2010 WL 1006917 at *2 (M.D. Pa. Mar.16, 2010) (citation omitted); *Jones v. Butler*, Civ. No. 09–3128, 2009 WL 2461885 at *1 & n.12 (E.D. Pa. Aug. 11, 2009) (citing authority). Although the Court must construe the facts alleged in the Plaintiff's favor, it need not accept bald assertions or legal conclusions as true. *Batchelor v. Rose Tree Media School Dist.*, Civil No. 11–6733, 2013 WL 1776076 at *3 (E.D. Pa. Mar. 28, 2013) (citing authority).

A factual attack on jurisdiction differs from a facial attack in that "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In resolving a factual challenge under Rule 12(b)(1), "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Electronics Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (*citing Mortensen*, 549 F.2d at 891). *See also Gordon v. East Goshen Twp.*, 592 F. Supp. 2d 828, 836-37 (E.D. Pa. 2009). It is the plaintiff's burden to demonstrate that federal subject matter jurisdiction exists over his claims. *See Hedges v. United State*s, 404 F.3d 744, 750 (3d Cir. 2005) ("[T]he plaintiff must bear the burden of persuasion" in connection with a motion to dismiss brought pursuant to Rule 12(b)(1)) (*quoting Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406, 1409 (3d Cir. 1991)).

### 2. Rule 12(b)(6)

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (*quoting Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id*. (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id. (quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Although the Court must accept the allegations in the complaint as true, "[it is] not compelled to accept unsupported

conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."
*Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013) (*quoting Baraka v. McGreevey*, 481 F.3d
187, 195 (3d Cir. 2007)).  In addition, merely pleading facts consistent with liability is not
sufficient; the plaintiff must plead facts which permit the court to make a reasonable inference
that defendant is liable.  *Twombly*, 550 U.S. at 570.

Generally, a district court may not consider matters outside of the Complaint when ruling
on a Rule 12(b)(6) motion to dismiss.  "If, on a motion under Rule 12(b)(6) …, matters outside
the pleadings are presented to and not excluded by the court, the motion must be treated as one
for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).[5]  An exception to this rule exists

---

[5] Under Federal Rule of Civil Procedure 12(d), a court properly converts a motion to dismiss to one for summary judgment if:  (1) the materials go outside the pleadings and are not excluded by the court and (2) the parties are given adequate notice of the court's intention to convert the motion. *Brown v. U.S. Steel Corp.*, 462 F. App'x 152, 155 (3d Cir. 2011); *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989).  If a motion to dismiss is treated as a motion for summary judgment, then the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d).  This includes giving a party opposing summary judgment an adequate opportunity to obtain discovery.  *See Brown*, 462 F. App'x at 155; *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  However, the Third Circuit Court of Appeals has admonished that, "if a party believes it needs additional time for discovery, it must follow the procedure outlined in Rule 56(f) of the Federal Rules of Civil Procedure."  *Brown,* 462 F. App'x at 155.  The court "has interpreted Rule 56(f) as imposing a requirement that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying ... what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Id.* at 155-56 (*quoting Dowling*, 855 F.2d at 139–40).  A party's "failure to file a Rule 56(f) affidavit is fatal to his claim of insufficient discovery."  *Brown*, 462 F. App'x at 156 (*citing Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002)).

Here, the Federal Defendants have submitted documents outside of the pleadings in support of their motion as it relates to Plaintiff's claims under FOIA and the FTCA. To the extent this Court relies on matters outside the pleadings in its disposition of jurisdictional issues, conversion under Rule 12(d) is not technically required. Nevertheless, to the extent that the Court's treatment of Plaintiff's claims can properly be characterized as a Rule 56 disposition, the requirements for conversion under Rule 12(d) have been satisfied because:  (i) Plaintiff was given adequate notice by virtue of the fact that the Moving Defendants expressly moved for summary judgment under Rule 56 as an alternative to obtaining relief under Rule 12(b)(6) or 12(b)(1); (ii) Plaintiff has filed documents outside of the pleadings in response to the Federal Defendants' motion; and (iii) Plaintiff has not made any request for additional discovery pursuant to Rule 56(f).  *See Hilfirty v. Shipman*, 91 F.3d 573, 578–79 (3d Cir. 1996) (noting that motions for summary judgment presented as motions in the alternative constitute sufficient notice to the non-moving party that court may convert motion to dismiss into motion for summary judgment); *Prudential Ins. Co. of America v. Eisen*, Civil No. 11–05872, 2012 WL 876747 *3 (E.D. Pa. Mar. 15, 2012) (requirements for conversion

whereby courts may consider, for Rule 12(b)(6) purposes: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

   B. <u>Motion for Summary Judgment</u>

   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *Diaz v. City of Philadelphia,* --- F. App'x---, 2014 WL 1724440 *2 (3d Cir. May 2, 2014). A district court analyzing a Rule 56 motion must view the facts of record, and any reasonable inferences arising therefrom, in the light most favorable to the nonmoving party. *Diaz*, *supra*, at *2 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011). However, unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge*

---

were satisfied where all parties submitted and referred to documents outside of the pleadings and one party specifically requested summary judgment as an alternative form of relief); *Godshall v. Independence Communications, Inc.*, Civ. No. 11-3000, 2011 WL 5980922 *1 (E.D. Pa. Nov. 30, 2011) (where defendants styled their motion as a "Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment," plaintiff was on notice, "by virtue of the title alone… that [the court] might entertain a motion for summary judgment"). Accordingly, the Court has included in this Memorandum Opinion an acknowledgement of the standard of review that applies in a Rule 56 situation.

*v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir.1993); *Smith v. Samuels*, Civ. No. 3:12-524, 2013 WL 5176742 at *3 (M.D. Pa. Sept. 12, 2013).

### C. Pro Se Litigant

In this case, Plaintiff is proceeding *pro se*. Pleadings and other submissions by a *pro se* litigant are subject to liberal construction. *Salley v. Secretary Pennsylvania Dept. of Corrections*, --- F. App'x ---, 2014 WL 1706351 *3 (3d Cir. 2014); *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011). Nevertheless, for Rule 12(b)(6) purposes, a *pro se* complaint must still "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Salley, supra*, at *3 (*quoting Ashcroft,* 556 U.S. at 678). Similarly, "[a]lthough Plaintiff's filings are entitled to liberal construction" for purposes of Rule 56, "[s]he still must set forth facts sufficient to survive summary judgment." *Winfield v. Mazurkiewicz,* Civ. No. 11–584, 2012 WL 4343176 at *2 (W.D. Pa. Sept. 21, 2012). *See also Ezeiruaku v. United States,* Civ. No. 00–2225, 2000 U.S. Dist. LEXIS 17046, 2000 WL 1751077 at *3 (E.D. Pa. Nov.29, 2000) (noting that, "while pro se complaints are entitled to liberal construction, the plaintiff must still set forth facts sufficient to survive summary judgment") (*citing Shabazz v. Odum,* 591 F. Supp. 1513, 1515 (M.D. Pa. 1984)).

## III. Relevant Statutory Law

When Plaintiff's Second Amended Complaint and summary judgment papers are construed liberally, it appears that her grievances against the Federal Defendants are two-fold. First, Plaintiff complains that the Federal Defendants improperly withheld information bearing on her administrative complaint against the Bentzes. Second, Plaintiff complains that the Federal Defendants denied her any "administrative remedies." (SAC ¶ 91).

As Plaintiff recognizes, her grievance about the Federal Defendants' withholding of information implicates FOIA, 5 U.S.C. § 552.  Enacted "to facilitate public access to Government documents," *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), FOIA requires government agencies to promptly make available any records requested unless the requested records are exempt from disclosure under one or more of nine specific exemptions set forth in the FOIA statute.  *See* 5 U.S.C. § 552(a)(3)(A); *Davin v. United States Department of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995).  In fulfillment of this duty, an agency receiving a request for information must conduct a reasonable search for responsive records.  *See* 5 U.S.C. § 552(a)(3)(C) and (D);  *Abdelfattah v. U.S. Dept. of Homeland Security*, 488 F.3d 178, 182 (3d Cir. 2007) (*citing Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 58 (D.C. Cir. 1984)).

Generally, the agency has twenty days from the date of the FOIA request in which to make a determination as to whether the requested records will be produced.  28 U.S.C. § 552(a)(6)(A)(i).  Upon determining whether it will comply with the FOIA request, the agency must "immediately notify the person making [the] request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination."  *Id.*  Upon receipt of an appeal, the agency is required to make a determination within twenty days as to the merits of the appeal.  *Id.* at § 552(a)(6)(A)(ii).  If, on appeal, the agency's denial of the FOIA request is upheld in part or in whole, the agency must notify the requester of his or her right for judicial review.  *Id.*  If the agency fails to respond within the prescribed twenty-day period, then the requester is deemed to have constructively exhausted his or her administrative remedies and may proceed to file suit.  *Id.* at § 552(a)(6)(C)(i).  *See also Arizechi v. Internal Revenue Service*, Civ. No. 06-CV-5292, 2008 WL 539058 at *5 (D.N.J. Feb. 25, 2008) (citing 5 U.S.C. § 552(a)(6)(C)).

11

Plaintiff's other grievance against the Federal Defendants is that they denied her "administrative remedies." Plaintiff believes "it was clear that the Defendants Bentz [sic] violated federal EPA laws." (SAC, "Count Three" ¶ 74.) Specifically, she alleges that the "EPA... negligently and capriciously allowed Defendants Gary and Connie Bentz to violate its lead and/or mold dust renovation and tenant pamphlet notification policies, disregarding the harm it caused Plaintiff." (SAC, "Count Four" ¶ 85.) Defendant Hoyt is similarly alleged to have "ignored Mr. Samolia's [sic] ... statement that the Defendants did violate EPA statutes regarding renovations and giving tenants lead information." (SAC, "Relief" ¶ 87.)[6] Although it is not entirely clear what administrative remedies Plaintiff believes she is entitled to receive, her averments suggest that she sought protection from the Bentzes' alleged acts of retaliation after she made her administrative complaint, compensation for her out-of-pocket losses, protection from exposure to the alleged contaminants in the first place, and/or enforcement of administrative penalties against the Bentzes.

Although Plaintiff never identifies the specific federal laws that the Bentzes allegedly violated, it appears she is referring to the Residential Lead-Based Paint Hazard Reduction Act (the "RLBP Hazard Reduction Act"), 42 U.S.C. §§ 4851 *et seq.,* and Title IV of the Toxic Substances Control Act (the "TSCA"), 15 U.S.C. §§ 2681-2692. Because these statutes are central to several of Plaintiff's claims, a brief overview of their structure and purpose is necessary.

---

[6] Despite Plaintiff's conclusory averments that the Bentzes violated the federal environmental laws, the record before this Court indicates that Inspector Samolis never completed his investigation of Plaintiff's administrative complaint against the Bentzes. (See Decl. of Shanna L. Halpern [Docket No. 44-1] ¶ 10 and Ex. 1(c) [Docket No. 44-4].) Therefore, even assuming the truth of Plaintiff's averments as to what Mr. Samolis may have told her, the record shows that Mr. Samolis could not have based any of his representations on the results of an inspection, because apparently an inspection was never performed.

The RLBP Hazard Reduction Act has been aptly summarized by the Third Circuit Court of Appeals as follows:

> The Residential Lead–Based Paint Hazard Reduction Act is a disclosure statute requiring a seller or lessor of residential target housing (1) to provide the purchaser or lessee with a lead hazard information pamphlet (as described in 15 U.S.C. § 2686); (2) to disclose the known or possible presence of lead-based paint or other lead hazards; (3) to provide information about lead hazards; and (4) to allow the purchaser or lessee a ten-day risk assessment period. FN3 42 U.S.C. § 4852d(a). A seller or lessor who knowingly violates these requirements is subject to the following penalties:

> > FN3. Target housing is defined as "any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than 6 years of age resides or is expected to reside in such housing) or any 0–bedroom dwelling." 40 C.F.R. § 745.103.

> (1) Monetary penalty

> Any person who knowingly violates the provisions of this section shall be subject to civil money penalties in accordance with the provisions of section 3545 of this title.

> (2) Action by Secretary

> The Secretary [of Housing and Urban Development] is authorized to take such lawful action as may be necessary to enjoin any violation of this section.

> (3) Civil liability

> Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual.

> (4) Costs

> In any civil action brought for damages pursuant to paragraph (3) the appropriate court may award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails.

> (5) Prohibited act

> It shall be a prohibited act under section 409 of the Toxic Substances Control Act [15 U.S.C. § 2689] for any person to fail or refuse to comply with a provision of this section or with any rule or order issued under this section. For purposes of enforcing this section under the Toxic Substances Control Act [15 U.S.C. § 2601 et seq.] the penalty for each violation applicable under section 15 of that Act [15 U.S.C. § 2615] shall not be more than $10,000.

> 42 U.S.C. § 4852d(b)(1)-(5). Subsections (1) and (2) provide the Secretary of Housing
> and Urban Development with the power to impose monetary penalties and seek
> injunctions in federal court for violations of § 4852d(a)'s disclosure requirements.
> Subsections (3) and (4) create a private right of action for treble damages and costs
> against any person who violates the disclosure requirements. Subsection (5) defines non-
> disclosure of lead-paint hazards as a "prohibited act" under the Toxic Substances Control
> Act, making it subject to enforcement by the Environmental Protection Agency.

*Cudjoe v. Department of Veterans Affairs*, 426 F.3d 241, 245-46 (3d Cir. 2005) (alterations in the original).

Title IV of the Toxic Substances Control Act, entitled "Lead Exposure Reduction" is also potentially relevant here. Enacted in 1992, Section 402(a) of the TSCA directs the EPA to "promulgate final regulations governing lead-based paint activities to ensure that individuals engaged in such activities are properly trained; that training programs are accredited; and that contractors engaged in such activities are certified." 15 U.S.C. § 2682(a)(1). The section further directs that these regulations "contain standards for performing lead-based paint activities, taking into account reliability, effectiveness, and safety." *Id*. Section 402(c)(3) requires the EPA within four years to revise the regulations to apply "to renovation or remodeling activities in target housing, public buildings constructed before 1978, and commercial buildings that create lead-based paint hazards." *Id*. § 2682(c)(3). The statute defines "target housing" to include "any housing constructed prior to 1978." *Id*. § 2681(17).[7] The regulations that implement the RLBP Hazard Reduction Act and the TSCA are found at 40 C.F.R. Part 475.

As the Court of Appeals noted in *Cudjoe*, the EPA Administrator has the authority to enforce disclosure violations arising under the RLBP Hazard Reduction Act because such violations are construed as "prohibited acts" under the TSCA. *See* 42 U.S.C. § 4852d(b)(5).

---

[7] Another federal statute, the Lead-Based Paint Poisoning Prevention Act, 42 U.S.C. §§ 4821-4846, covers federally funded low income housing. There is no evidence before the Court to suggest that this statute applies in this case.

Other acts prohibited by the TSCA include the failure or refusal of any person "to comply with a provision of [Title IV of the Act] or with any rule or order issued" thereunder. 15 U.S.C. § 2689. The TSCA empowers the EPA Administrator to impose civil penalties against violators, 15 U.S.C. § 2615(a), and it exposes willful violators to potential criminal penalties. *Id.* at § 2615(b). In situations posing an imminent hazard, the TSCA authorizes the Administrator to commence an action for seizure of the imminently hazardous substance, *id.* at § 2606(a)(1)(A), or an action for relief against "any person who manufactures, processes, distributes in commerce, or uses, or disposes of" the imminently hazardous substance, *id.* at § 2606(a)(1)(B). Finally, the TSCA includes a citizen's suit provision whereby private citizens can personally sue a violator for injunctive relief, 15 U.S.C. § 2619(a)(1), or the EPA Administrator "to compel the Administrator to perform any act or duty under this chapter which is not discretionary." *Id.* at § 2619(a)(2).

Despite the relevance of the RLBP Hazard Reduction Act and the TSCA to Plaintiff's claims, she does not cite these laws or attempt to invoke any remedies arising under them. Instead, Plaintiff has opted to seek relief under the Freedom of Information Act, the Administrative Procedures Act, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and common law theories of negligence. The Federal Defendants contend that each of these claims is subject either to dismissal or summary judgment in their favor. This Court agrees and will address the deficiencies in each of the Plaintiff's causes of action, although not in the order in which they are presented in the Second Amended Complaint.

## IV. Analysis

A. Plaintiff's FOIA Claim

In Count 3 of the Second Amended Complaint, Plaintiff asserts a claim against the

Federal Defendants under FOIA, 5 U.S.C. § 552. According to the Second Amended Complaint,

Plaintiff lodged an administrative complaint against the Bentzes on the EPA's emergency hotline

on July 24, 2012. (SAC "Count Two" ¶ 24.) Thereafter, she was in contact with EPA

investigator Mark Samolis and supplied the Agency with certain evidence concerning the

Bentzes' alleged violations. (*Id.* at ¶¶ 28, 30; Pl.'s Resp. to Defs.' Summ. Judg. Mot., Exs. 1-6

[Docket No. 51-1 through 51-6].) On September 24, 2012, Plaintiff filed an online FOIA request

to obtain information about the "status, actions, and outcomes" of her complaint and EPA's

investigation. (SAC, "Count Three" ¶¶ 64, 66; Decl. of Shanna L. Halpern, Ex. 1a [Docket No.

44-3] pp. 2-3.) She was initially advised by an EPA official that she would be informed as to the

outcome of her administrative case. (SAC, "Count Three" ¶¶ 64, 66; *see* Decl. of Shanna L.

Halpern, Ex. 1b [Docket No. 44-3] p. 2.) Plaintiff complains that, despite this representation, the

EPA failed to respond adequately to her request for information. In particular, she avers that the

EPA sent her information about an unrelated property (SAC, "Count Three" ¶ 65) and that

Samolis and Hoyt refused to give her any information, claiming it was "secret" and that only

Hoyt (not Samolis) would know the outcome of the Agency's investigation. (*Id.* at ¶¶ 64, 66-69;

71-72.)[8]

An agency sued under FOIA may prevail if it establishes that its search for responsive

documents was adequate and that an existing document which has been requested has been

---

[8] Plaintiff also complains that Hoyt failed to protect her from retaliation and refused to "exert any administrative remedies whatsoever." (SAC ¶¶ 62-63, 70, 74.) To the extent Plaintiff is complaining about a lack of adequate enforcement of the federal environmental laws, no redress is available under FOIA.

produced, is unidentifiable, or has been withheld pursuant to a statutory exemption. *Lee v. United States Dep't of Justice*, 235 F.R.D. 274, 288 (W.D. Pa. 2006) (*quoting SafeCard Servs., Inc. v. Securities and Exchange Commission*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Stuler v. Internal Revenue Service*, Civ. No. 05CV1717, 2006 WL 891073 at *2 (W.D. Pa. Mar. 31, 2006) (citing *Perry v. Block,* 684 F.2d 121, 126 (D.C. Cir. 1982)). For purposes of this standard,

> [t]he relevant inquiry is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dept. Of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To demonstrate the adequacy of its search, the agency should provide a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir.1999) (*quoting Oglesby*, 920 F.2d at 68).

*Abdelfattah v. U.S. Dept. of Homeland Sec.,* 488 F.3d 178, 182 (3d Cir. 2007). *See also Lechliter v. Rumsfeld*, 182 F. App'x 113, 115 (3d Cir. 2006).

Summary judgment is the primary avenue for resolving a FOIA dispute. *See Lewis v. United States Environmental Protection Agency*, Civ. No. 06-2660, 2006 WL 3227787 at *2 (E.D. Pa. Nov. 3, 2006); *Berger v. Internal Revenue Service,* 487 F. Supp. 2d 482, 491 (D.N.J. 2007). A district court may award summary judgment "on the basis of agency affidavits alone where the affidavits are sufficiently detailed and in good faith." *Berger*, 487 F. Supp. 2d at 493 (*quoting Manna v. U .S. Dep't of Justice*, 832 F. Supp. 866, 870 (D.N.J. 1993), *aff'd*, 51 F.3d 1158 (3d Cir. 1995)). Courts are to accord agency declarations a presumption of good faith. *Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 357 (4th Cir. 1991); *Lee,* 235 F.R.D. at 287) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1997, 1200 (D.C. Cir. 1991)).

The Federal Defendants argue that they are entitled to entry of summary judgment and/or dismissal of Count 3 because Plaintiff failed to exhaust her administrative remedies and because the EPA has produced all documents that are responsive to Plaintiff's FOIA request. In support

of their motion, Defendants have submitted a declaration from Shanna L. Halpern, a Senior

Environmental Employee in the Land and Chemicals Division of EPA Region III. (Decl. of

Shanna L. Halpern [Docket No. 44-1] ¶ 1.) Ms. Halpern provides the following chronology of

events relative to Plaintiff's FOIA request:

> 8. Plaintiff submitted a FOIA request on September 24, 2012 through EPA's online system (EPA FOIA Request No. 03-FOI-01120-12). A true and correct copy of plaintiff's FOIA request and amendment, which are maintained at the EPA in the ordinary course of business, is attached hereto as Exhibit 1a. Plaintiff's FOIA request stated as follows:

> > 226 East End Avenue
> > Connie and Gary Bentz (owners)
> > Pittsburgh, PA 15206
> > Complaint made in July 2012 with Mark Samolis
> > Complaint was regarding illegal and harmful lead renovations and breach of EPA procedures regarding lead. *I am seeking FOIA information on the status, actions, and outcomes of the complaint*.

> Ex. 1a, p. 1 (emphasis added). Several minutes later, plaintiff submitted an amendment to correct the zip code contained in her initial request. *Id.*, p. 2 ("I am correcting the zip code. It is 226 East End Avenue Apt 2, Pittsburgh PA 15221 not 15206."). I have reviewed my files, and confirmed that the Land and Chemicals Division did not receive any other FOIA requests from Plaintiff.

> 9. By letter dated October 3, 2012, EPA responded to plaintiff's September 24, 2012 FOIA request. A true and correct copy of the EPA's letter to plaintiff dated October 3, 2012, which is maintained at the EPA in the ordinary course of business, is attached hereto as Exhibit 1b. In the letter, the EPA advised plaintiff that Mark D. Samolis, inspector in charge of the investigation, was still processing her request. *See* Ex. 1b. The letter further stated that "[h]e expects to complete his investigation within the next two weeks. Mr. Samolis will notify you of the results." *Id.* The EPA also advised plaintiff that she could appeal the response in writing within 30 days, to the National Freedom of Information Officer, U.S. EPA, Records, FOIA and Privacy Branch, 1220 Pennsylvania Avenue, NW (2822T), Washington, D.C. 20460. *Id.* Consistent with FOIA regulations, EPA's response specified that the appeal must be in writing and received within 30 days of EPA's response. *Id.*

> 10. After plaintiff filed the Complaint in this action, I contacted Mr. Samolis to determine whether he had completed his investigation of the property at issue in this matter, and whether he had followed up with plaintiff by sending her the requested documents. He informed me that he had been unable to perform an inspection of the property and thus did not complete his investigation. I then reviewed all the files related to this matter and found correspondence from plaintiff to EPA, as well as other documents generated by EPA in follow up to her inquiries regarding the subject property. I copied all the documents in the file and they were provided to plaintiff by letter dated

January 7, 2014. A true and correct copy of the EPA's letter to plaintiff dated January 7, 2014 (without enclosures), which is maintained at the EPA in the ordinary course of business, is attached hereto as Exhibit 1c. The enclosures consisted of approximately 33 pages of documents.

11. In its January 7, 2014 response letter, EPA advised plaintiff that she could appeal the response in writing within 30 days, to the National Freedom of Information Officer, U.S. EPA, Records, FOIA and Privacy Branch, 1220 Pennsylvania Avenue, NW (2822T), Washington, D.C. 20460. *See* Ex. 1c. Consistent with FOIA regulations, EPA's response specified that the appeal must be in writing and received within 30 days of EPA's response. *Id.*

12. EPA has no record of an administrative appeal in connection with plaintiff's FOIA request submitted on September 24, 2012 (No. 03-FOI-01120-12). The 30 day time period for plaintiff to appeal the EPA's January 7, 2014 response letter has now expired. In addition, plaintiff never appealed the EPA's October 3, 2012 response letter.

(Halpern Decl. ¶¶ 8-12.)

Plaintiff contends that the EPA failed to respond to her September 24, 2012 FOIA request within the prescribed twenty-day period and, as a result, she is statutorily deemed to have exhausted her administrative remedies pursuant to § 552(a)(6)(C)(i). Defendants dispute this point; they argue that the EPA's October 3, 2012 letter[9] was a "determination" of Plaintiff's FOIA request within the meaning of § 552(a)(6)(A) that triggered her obligation to take an

---

[9] In relevant part, the letter states:

Dear Ms. N'Jai;

In response to the above-referenced Freedom of Information Act (FOIA) request, dated September 24, 2012, and received on September 24, 2012, please be advised that Mr. Samolis of the Land and Chemicals Division is still processing your request. He expects to complete his investigation within the next two weeks. Mr. Samolis will notify you of the results.

You may appeal this response to the national Freedom of Information Officer, U.S. EPA, Records, FOIA an Privacy Branch, 1200 Pennsylvania Avenue, NW (2822T), Washington, DC 20460, Fax: (202)566-2147, E-mail: hq.foia@epa.gov. Only items mailed through the United States Postal Service may be delivered to 1200 Pennsylvania Avenue, NW. If you are submitting your appeal via hand delivery, courier service or overnight delivery, you must address your correspondence to 1301 Constitution Avenue, N.W., room 6416J, Washington, DC 20004. Your appeal must be made in writing, and it must be submitted no later than 30 calendar days from the date of this letter. …

(Halpern Decl., Ex. 1b.)

appeal if she was dissatisfied with the Agency's handling of her request.  The Court need not resolve this dispute because, in any event, Plaintiff's FOIA claim has been mooted by the fact that all responsive documents within the Agency's possession have been produced to her.

Article III of the United States Constitution requires that "an actual controversy must be extant at all stages of [the Court's] review, not merely at the time the complaint is filed." *Camesi v. University of Pittsburgh Medical Center,* 729 F.3d 239, 247 (3d Cir. 2013) (*quoting Genesis Healthcare Corp. v. Symczyk,* --- U.S. ---, 133 S. Ct. 1523, 1528 (2013)).  A claim which is moot therefore presents a separate insurmountable jurisdictional defect.[10]  *See Mollett v. Leicth*, 511 F. App'x 172, 173 (3d Cir. 2013) ("If a claim does not present a live case or controversy, the claim is moot, and a federal court lacks jurisdiction to hear it.") (citation omitted); *Goodmann v. People's Bank,* 209 F. App'x 111, 113 (3d Cir. 2006) (noting that a "District Court lacks subject matter jurisdiction when the controversy has become moot" and affirming the dismissal of a mooted civil action pursuant to Fed. R. Civ. P. 12(b)(1)); *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004) (a court no longer has subject-matter jurisdiction when a claim is moot because its jurisdiction is limited to "cases and controversies" under Art. III of the Constitution).  "An action is rendered moot when 'an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation.'"  *Camesi,* 729 F.3d at 247 (quoting *Szmczyk, supra,* at 1528) (internal quotation marks omitted).

---

[10] A mootness argument presents a factual challenge to the Court's subject matter jurisdiction.  *See Holland v. New Jersey Resources Corp.*, Civ. No. 12–07858, 2013 WL 4780763 at *1 n.2 (D.N.J. 2013); *Gordon v. East Goshan Twp.*, 592 F. Supp. 2d 828, 837 (E.D. Pa. 2009).  Consequently, no presumptive truthfulness attaches to Plaintiff's allegations, and the Court may consider and weigh evidence outside the pleadings in order to determine whether it has jurisdiction.  *See Gould Electronics Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000); *Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

In this case, Ms. Halpern's declaration sets forth the procedures utilized by EPA's Region III for locating documents responsive to a FOIA request. This includes a search of the EPA's electronic databases (such as the "RCRA Online System" and the "Integrated Compliance Information System") as well as a request for records from the EPA's Federal Records Coordinator and the EPA inspector assigned to the property in question. (*See* Halpern Decl. ¶ 5.) Ms. Halpern explains that, after speaking with Mr. Samolis and reviewing all of the files related to Plaintiff's inquiry, she located some 33 pages of documents that were responsive to Plaintiff's FOIA request and provided these to Plaintiff by letter dated January 7, 2014. (*Id.* at ¶ 10.)

The Court finds Ms. Halpern's declaration to be in good faith and sufficiently detailed so as to establish the EPA's compliance with its duty under FOIA to conduct an adequate search for, and to produce, records that are responsive to the Plaintiff's request. *See Wadhwa v. Department of Veterans Affairs*, 446 F. App'x 516, 520 (3d Cir. 2011) (in order to demonstrate the adequacy of its search for documents, an agency "should provide a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched.") (ellipsis in the original) (*quoting Abdelfattah*, 488 F.3d at 182 and *citing Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)); *Degenes v. Federal Bureau of Investigation*, Civ. No. 11-916, 2012 WL 4478358 at *7 (W.D. Pa. Sept. 27, 2012) ("[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.") (quoting *Lechliter v. Rumsfeld*, 182 F. App'x 113, 116 (3d Cir. 2006)). Importantly, Plaintiff does not dispute the adequacy of the EPA's search for responsive documents, nor does she point to any evidence suggesting that additional documents are within EPA's possession but have not been turned over. Although Plaintiff complains that

the Agency's response took too long and that Hoyt impeded the process in bad faith, Plaintiff does not dispute that the EPA has satisfied, albeit belatedly, its obligations under FOIA.

Accordingly, as all documents responsive to Plaintiff's FOIA request have been produced by the EPA, her FOIA claim is moot and must be dismissed for lack of jurisdiction. *See Campbell v. Social Security Admin.,* 446 F. App'x 477, 480 (3d Cir. 2011) (plaintiff's claim under FOIA was moot with respect to documents that were produced); *OSHA Data/CIH, Inc. v. U.S. Dept. of Labor,* 220 F.3d 153, 157 n.6 (3d Cir. 2000) (where parties agreed that records sought by plaintiff pursuant to FOIA claim had been produced by the Department of Labor, that count was moot); *Degenes, supra,* at *7-8 (dismissing FOIA claim for lack of subject-matter jurisdiction where no documents were improperly withheld); *Stuler v. I.R.S.*, Civ. No. 12–391, 2012 WL 1893579 at * 2 (W.D. Pa. May 24, 2012) (finding that "[o]nce Defendant sent Plaintiff all responsive documents, this Court no longer had its subject matter jurisdiction," and granting the defendant's 12(b)(1) motion.

B. <u>Plaintiff's Claim Under the Administrative Procedures Act</u>

Count 5 of the Second Amended Complaint asserts a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706. "The judicial review provisions of the APA…provide a limited cause of action for parties adversely affected by agency action." *Chehazeh v. Attorney Gen. of the United States*, 666 F.3d 118, 125 n.11 (3d Cir. 2012) (quoting *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (internal quotation marks omitted)). Pursuant to this statutory scheme:

[a]ny person "adversely affected or aggrieved" by agency action; see § 702, including a "failure to act," is entitled to "judicial review thereof," as long as the action is a "final agency action for which there is no other adequate remedy in a court," see § 704. The standards to be applied on review are governed by the provisions of § 706. But before any review at all may be had, a party must first clear the hurdle of §

701(a). That section provides that the chapter on judicial review "applies, according to the provisions thereof, except to the extent that-(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

*Heckler v. Chaney,* 470 U.S. 821, 828 (1985). *See also Chehazeh*, 666 F.3d at 126-27.

The Federal Defendants correctly observe that the APA does not allow claims for money damages. *See* 5 U.S.C. § 702 (waiving the United States' sovereign immunity for "action[s] … seeking relief other than money damages"); *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 263 (1999) (where respondent's request for an equitable lien was effectively a claim for money damages, the claim fell outside the APA's waiver of sovereign immunity and was therefore barred). Accordingly, any claim for monetary relief that Plaintiff may be asserting under Count 5 is dismissed for lack of jurisdiction.

To the extent that Plaintiff is seeking equitable relief, the Federal Defendants move for dismissal of Plaintiff's APA claim on the ground that Plaintiff has an adequate remedy through FOIA. Insofar as Count 5 is premised on the Federal Defendants' handling of Plaintiff's request for information about her administrative complaint, this argument has merit. The APA authorizes judicial review only of final agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Accordingly, "APA claims arising out of an agency's response to a FOIA request must be dismissed when they seek relief that can be obtained through a FOIA claim itself." *Electronic Privacy Information Center v. National Sec. Agency*, 795 F. Supp. 2d 85, 95 (D.D.C. 2011) (citing authority). *See also Rimmer v. Holder* (6th Cir. 2012) (district court's powers under FOIA clearly provided an alternate adequate remedy, thereby triggering § 704's bar on claims brought under the APA) (citing authority). Because the EPA has produced the FOIA information which Plaintiff sought, this aspect of Plaintiff's APA claim is also moot.

It appears, however, that Plaintiff is also basing her APA claim partly on the Federal Defendants' failure to provide Plaintiff "any administrative remedies." (*See* SAC, "Count Five" ¶ 91.) Regardless of how Plaintiff's APA claim is construed, the Federal Defendants contend that no "final agency action" has been pled for purposes of the APA. It is clear, however, that *inaction* on the part of an agency can sometimes constitute grounds for review under the APA. *See, e.g.*, 5 U.S.C. § 706(1) (empowering district courts in certain cases to "compel agency action unlawfully withheld or unreasonably delayed."); *id.* at § 702 (extending the Act's waiver of sovereign immunity to allegations that the subject agency or officer "acted or failed to act"). *See also Heckler v. Chaney*, 470 U.S. at 828 (any person adversely affected or aggrieved by agency action, including a "failure to act," is entitled to judicial review, subject to the APA's other limitations) (citing 5 U.S.C. §§ 702, 704) (internal quotation marks omitted).

In order to be actionable under 5 U.S.C. § 706(1), an APA claim based on agency inaction must allege "that an agency failed to take a *discrete* agency action[11] that it is *required to take*." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in the original). "The limitation to *required* agency action rules out judicial direction of even discrete agency action that is not demanded by law." *Id.* at 65 (emphasis in the original). Thus, "the only agency action that can be compelled under the APA is action legally *required*." *Id.* at 63 (emphasis in the original). This construction of § 706(1) is consistent with § 701(a)(2), which precludes judicial review of agency action that is "committed to agency discretion by law." *See Chehazeh*, 666 F.3d at 125 n.11 (observing that if an agency action is committed to agency

---

[11] "Discrete" agency action generally refers to "five categories of decisions made or outcomes implemented by the agency – 'agency rule, order, license, sanction [or] relief,'" or "'the equivalent or denial thereof.'" *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (quoting and discussing the definition of "agency action" as set forth in 5 U.S.C. § 551(13)) (alteration in the original).

discretion by law pursuant to § 701(a)(2), then such an action cannot be challenged under the APA) (quoting *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009)).

Here, Plaintiff has offered no factual averments that would establish the Federal Defendants' failure to undertaken a discrete, non-discretionary action and thereby state a plausible claim for relief under the APA. In fact, the Second Amended Complaint does not even identify the specific provision of federal law which the Bentzes have allegedly violated, much less does it identify a source of law imposing upon the EPA Administrator a nondiscretionary obligation to provide Plaintiff the administrative remedies she apparently seeks. As pled, Count 5 of the Second Amended Complaint is plainly deficient.

Nevertheless, this Court is required to consider whether Plaintiff could possibly amend her pleading so as to cure any deficiencies. *See Kim v. I.R.S.*, 522 F. App'x 157, 159 (3d Cir. 2013) (a district court should not dismiss a *pro se* complaint without allowing the plaintiff leave to amend unless amendment would be inequitable or futile) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Accordingly, the Court will consider whether Plaintiff's well-pled allegations could support a viable claim for relief under the APA.

This brings the Court back to its consideration of the Residential Lead-Based Paint Hazard Reduction Act (the "RBLP Hazard Reduction Act"), 42 U.S.C. §§ 4851 *et seq.,* and the Toxic Substances Control Act (the "TSCA"), 15 U.S.C. §§ 2601 *et seq.* Even assuming as a matter of historical fact that the Bentzes *did*, in fact, rent Plaintiff an apartment containing lead-based paint, *did* fail to provide her the requisite notice about the hazards of lead-based paint, and *did* undertake renovations that were contrary to the provisions of the TSCA and its implementing regulations, Plaintiff's averments are still insufficient to state a viable claim under the APA. That is because neither the RLBP Hazards Reduction Act nor the TSCA impose a

25

nondiscretionary duty on the part of the EPA Administrator to provide the type of administrative relief Plaintiff seeks.

First, to the extent Plaintiff seeks compensation from the EPA for her alleged injuries and out-of-pocket expenses, the Court notes that neither the RLBP Hazard Reduction Act nor the TSCA allows for this type of relief. In addition, as the Court has already observed, the APA does not waive the United States' immunity relative to claims for monetary damages. *See* 5 U.S.C. § 702. Accordingly, the Administrator had no legal duty to compensate Plaintiff for her alleged injuries and monetary losses.

In addition, to the extent Plaintiff sought protection from alleged retaliatory acts on the part of the Bentzes (*see* SAC, "Count Three" ¶¶ 62-63), no provision of the RLBP Hazards Reduction Act or the TSCA affords such relief. Accordingly, the Federal Defendants cannot be compelled under the auspices of the APA to sanction the Bentzes for alleged acts of retaliation or to otherwise protect Plaintiff in that regard.

Plaintiff's summary judgment papers also suggest a belief on her part that the EPA should have undertaken emergency remediation measures to abate the alleged contamination at 226 East End Avenue after Plaintiff complained about the problem on the EPA's hotline. (*See* Pl.'s Sur-reply to Defs.' Reply Br. in Supp. of Mot. to Dismiss and/or Mot. Summ. Judg. [Docket No. 56] at 2 (alleging, in relation to Plaintiff's negligence claim, that the EPA contributed to her personal injuries by "[leaving] Plaintiff in a known hazardous situation from 7/24/12-7/31/12, until she went to stay in a hotel or somewhere else...").) Although the TSCA authorizes the EPA Administrator to commence a civil action in cases where the presence of toxic substances presents an imminent hazard, this statutory authorization does not create a nondiscretionary duty on the part of the Administrator to do so. Rather, the statute provides that the Administrator "*may*

26

*commence* a civil action" for seizure of the offending substance or for specified relief against the responsible individual. *See* 15 U.S.C. § 2606(a)(1)(A), (B) (emphasis added).[12] Accordingly, the TSCA did not impose on the Administrator a nondiscretionary duty to undertake emergency remediation measures with respect to the allegedly hazardous conditions at Plaintiff's apartment during the one-week period in which she remained in residence there.

Finally, Plaintiff appears to be complaining more generally that the Federal Defendants should have enforced the federal environmental laws more vigorously against the Bentzes. Presumably, Plaintiff is unhappy about the fact that Mr. Samolis did not complete his investigation and the Bentzes were never sanctioned by the Administrator for their alleged violations of the RLBP Hazard Reduction Act and the TSCA.

However, the Supreme Court has held that "[a]n agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)" of the APA. *Heckler v. Chaney*, 470 U.S. at 832. The Supreme Court has expounded on the various reasons why agency decisions to refuse enforcement are generally unsuitable for judicial review:

> First, an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise. Thus, the agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all. An agency generally cannot act against each technical violation of the statute it is charged with enforcing. The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities. Similar concerns animate the principles of administrative law that courts generally will defer to an agency's construction of the statute it is charged with implementing, and to the procedures it adopts for implementing that statute. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55

---

[12] The TSCA also *requires* the Administrator to commence a civil action in situations where the Administrator has not made a rule governing the offending substance immediately effective. 15 U.S.C. § 2606(a)(2). This provision has no apparent applicability in this case.

L.Ed.2d 460 (1978); *Train v. Natural Resources Defense Council, Inc.*, 421 U.S. 60, 87, 95 S.Ct. 1470, 1485, 43 L.Ed.2d 731 (1975).

> In addition to these administrative concerns, we note that when an agency refuses to act it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect. Similarly, when an agency does act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory powers. *See, e.g., FTC v. Klesner*, 280 U.S. 19, 50 S.Ct. 1, 74 L.Ed. 138 (1929). Finally, we recognize that an agency's refusal to institute proceedings shares to some extent the characteristics of the decision of a prosecutor in the Executive Branch not to indict-a decision which has long been regarded as the special province of the Executive Branch, inasmuch as it is the Executive who is charged by the Constitution to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, § 3.

*Chaney*, 470 U.S. at 831-32.

Although an agency's decision not to invoke a statutory enforcement mechanism is presumptively unreviewable, this presumption may be rebutted if the statute "circumscribes agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion." *Chaney*, 470 U.S. at 834-35. Such circumstances do not exist with respect to the statutes at issue here.

In this case, the alleged environmental violations are enforceable by the EPA Administrator through the TSCA. *See* 42 U.S.C. § 4852d(b)(5) (stating that violations of the RLBP Hazards Reduction Act or rules promulgated thereunder are "prohibited acts" under the TSCA); 15 U.S.C. § 2689 (making it "unlawful for any person to fail or refuse to comply with a provision of [Title IV of the TSCA] or with any rule or order issued under this subchapter"). The "Penalties" provision of the TSCA states that "[a]ny person who violates a provision of section ... 2689 of this title shall be liable to the United States" for civil penalties in a specified amount and that these penalties "shall be assessed by the Administrator by an order made on the record" after notice and an opportunity for a hearing. 15 U.S.C. § 2615(a)(1), (2)(A). In determining the amount of the applicable civil penalty, the Administrator "shall take into

account" various specified factors, *id.* at § 2615(a)(1)(B), and "may compromise, modify, or remit, with or without conditions, any civil penalty which may be imposed under this subsection." *Id.* at § 2615(a)(2)(C).

Despite the statute's use of the word "shall," the foregoing provisions do not demonstrate a Congressional intent to circumscribe the EPA Administrator's enforcement discretion. The penalty provisions of the TSCA apply only after an administrative complaint has been filed by the Administrator and a violation has been found to exist by an Administrative Law Judge pursuant to the administrative procedures outlined in 40 C.F.R. Part 22. The fact that violators are liable for civil penalties in a specified amount once a violation is established says nothing about whether or when the Administrator must bring an enforcement action in the first place. Moreover, the TSCA contains an express statement of Congress' intent "that the Administrator shall carry out this chapter in a reasonable and prudent manner, and that the Administrator shall consider the environmental, economic, and social impact of any action the Administrator takes or proposes to take under this chapter." 15 U.S.C. § 2601(c). This language – directing the EPA to engage in a "complicated balancing of a number of factors which are peculiarly within its expertise," *Chaney*, 470 U.S. at 831, strongly suggests that Congress intended to grant the Administrator considerable discretion in determining how to best utilize the enforcement powers contained in the TSCA.

In sum, the provisions of the TSCA do not evince a Congressional intent to "circumscribe agency enforcement discretion," nor do they provide "meaningful standards for defining the limits of that discretion." *Chaney*, 470 U.S. at 834-35. Accordingly, to the extent Plaintiff is seeking relief under the APA in the form of a court order requiring the EPA to commence enforcement proceedings against the Bentzes under the TSCA, the request implicates

discretionary powers on the part of the EPA Administrator which are not reviewable under the APA.[13]  Because the pleading deficiencies in Count Five are incapable of being cured through further amendment, that count will be dismissed with prejudice.

### C.  Plaintiff's *Bivens* Claims

In her fourth cause of action, Plaintiff asserts claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), based on the alleged violation of her constitutional rights to due process, free speech, and equal protection under the law.  (*See* SAC, "Damages" clause at p. 16.)  Once again, the gravamen of these claims is Plaintiff's complaint that she was denied information about her administrative complaint and that the Federal Defendants allowed the Bentzes "to violate its lead and/or mold dust renovation and tenant pamphlet notification policies." (SAC, "Count Four" ¶ 85 and ¶¶ 81-87 generally.)[14]

Pursuant to *Bivens,* a plaintiff may file suit against a federal official in his or her individual capacity to redress a violation of the plaintiff's constitutional rights.  However, *Bivens*

---

[13] Although this Court concludes that the EPA's decision to not bring enforcement proceedings against the Bentzes is within the Agency's discretion, the Court notes that a contrary conclusion would not change the outcome of its ruling, because dismissal of the APA claim would then be required on different grounds.  That is to say, if the Administrator has a mandatory duty to investigate Plaintiff's administrative complaint and/or commence enforcement proceedings against the Bentzes upon finding a probable violation, then Plaintiff can seek an order against the EPA Administrator to enforce this mandatory duty under the TSCA's citizen suit provision, 15 U.S.C. § 2619(a)(2) (authorizing a private right of action against the Administrator to compel the Administrator "to perform any act or duty under this chapter which is not discretionary").  Under this scenario, no relief under the APA would be available to Plaintiff because she would have an "adequate remedy" under the citizens' suit provision of the TSCA.  *See* 5 U.S.C. § 704 (authorizing judicial review of "final agency action for which there is no other adequate remedy in a court").  Whether Plaintiff could prevail in a citizens' suit under the TSCA is irrelevant.  *Turner v. Secretary of U.S. Dept. of Housing and Urban Development*, 449 F.3d 536, 541 (3d Cir. 2006) ("[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of an opportunity to pursue that remedy.") (*quoting Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir.1998) and citing other authority) (alteration in the original).

[14] The paragraphs that should sequentially be numbered 86 and 87 in Count Four of the Second Amended Complaint are inadvertently numbered 83 and 84.

does not authorize suit against federal agencies, which retain their right to sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994) (federal agency cannot be sued in a *Bivens* claim); *Twillie v. Ohio*, 351 F. App'x 596, 598 (3d Cir. 2009) ("A claim against a federal agency cannot be raised under *Bivens*.") (*citing Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).  Plaintiff's *Bivens* claims against the EPA will therefore be dismissed on sovereign immunity grounds.

In addition, an action brought against a federal employee in her official capacity is effectively an action against the United States, so the protections of sovereign immunity apply to these types of claims as well.  *See Huberty v. United States Ambassador to Costa Rica*, 316 F. App'x 120, 122 (3d Cir. 2008) ("[a]n action against government officials in their official capacities constitutes an action against the United States.").  *See also Hudson v. Kennedy*, Civ. No. 12–12, 2013 WL 4778700 at *11 (W.D. Pa. Sept. 5, 2013) (*citing Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) and *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).  Because the United States has not waived its sovereign immunity with respect to the constitutional tort claims asserted in Count Four[15] Hoyt is immune from such claims in her official capacity.  *See Brazelton v. Holt,* 462 F. App'x 143, 146 (3d Cir. 2012) ("A *Bivens* suit 'against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity.'") (citation and internal quotation marks omitted).

To the extent that Hoyt is being sued in her individual capacity, the Federal Defendants argue that the claims should be dismissed because Plaintiff has failed to allege a plausible

---

[15] Notably, the United States' waiver of sovereign immunity in the Federal Torts Claims Act does not apply to constitutional tort claims.  *See* 28 U.S.C. § 2679(b)(2)(A).  Similarly, the government's waivers of immunity under the FOIA and Administrative Procedures Act have no applicability under *Bivens*.

violation of her constitutional rights.  This Court agrees and will address the various pleading deficiencies relative to Plaintiff's due process, First Amendment, and equal protection claims.[16]

*1.  Due Process*

The Fifth Amendment to the U.S. Constitution provides that "no person shall … be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.[17] This clause "has both substantive and procedural components; it performs the office of both the Due Process and Equal Protection Clauses of the Fourteenth Amendment in requiring that the federal sovereign act impartially." *Fullilove v. Klutznick*, 448 U.S. 448, 548 (1980) (Stevens, J., dissenting).

To state a claim for the deprivation of procedural due process, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the [Fifth] Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *CGL, LLC v. Schwab*, Civ. No. 11-4593, 2014 WL 1318396 at *4 (E.D. Pa. Apr. 2, 2014) (*citing Mulholland v. Government County of Berks, Pa*., 706 F.3d

---

[16] The Federal Defendants argue in the alternative that Hoyt is entitled to qualified immunity.  In light of this Court's conclusion that no constitutional violation has been pled, it need not address the issue of qualified immunity.

[17] Although Plaintiff has attempted to plead due process claims under the "14th and/or 5th Amendment," (SAC, "Damages Clause" at p. 16), only the Fifth Amendment (applicable to federal actors) is applicable here. Nevertheless, federal cases elucidating the parameters of due process rights under the Fourteen Amendment are instructive for present purposes because the protections afforded by the Fourteenth Amendment are similar to those afforded by the Fifth Amendment.  *See, e.g. Morehead v. People of New York ex rel. Tipaldo*, 298 U.S. 587, 610 (1936) ("[T]he restraint imposed by the due process clause of the Fourteenth Amendment upon legislative power of the State is the same as that imposed by the corresponding provision of the Fifth Amendment upon the legislative power of the United States."), *overruled in part on other grounds by, Olsen v. State of Nebraska ex rel. Western Reference & Bond Ass'n,* 313 U.S. 236; *United States v. Bowen*, 414 F.2d 1268, 1275 (3d Cir. 1969) (noting that the "restraint imposed upon legislation by the due process clauses of the [Fifth and Fourteenth] amendments is the same....'") (citation omitted); *Mathis v. Franklin County Children Services*, Civ. No. 2:08-CV-084, 2008 WL 1775422 at *5 (S.D. Ohio, Apr. 16, 2008) (stating that "Fifth Amendment due process claims are analyzed exactly like Fourteenth Amendment due process claims").

227, 238 (3d Cir. 2013)) (alteration in the original).  Although due process involves notice and an opportunity to be heard, it is flexible and calls for such procedural protections as the particular situation demands.  *Id. (citing Hamdi v. Rumsfield*, 542 U.S. 507, 533 (2004); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

To the extent Plaintiff is asserting a due process violation premised on Hoyt's alleged mishandling of her FOIA request, no plausible constitutional violation has been pled.  To begin, Plaintiff has not demonstrated that she was deprived of a constitutionally protected property or liberty interest.  Clearly, Plaintiff *does* have a statutory right under FOIA to obtain certain information, provided she complies with the statute's procedural requirements.  However, Plaintiff cites no authority suggesting that she has a constitutionally guaranteed right to receive agency feedback outside of the mechanisms and limitations set forth in FOIA.  Similarly, she cites no authority for the proposition that an agency's belated compliance under FOIA amounts to a deprivation of constitutional proportion.  Assuming Plaintiff could establish the deprivation of a Fifth Amendment property interest under this theory, the procedural remedies available under FOIA nevertheless provided Plaintiff constitutionally adequate process.  Indeed, the record before this Court establishes that Plaintiff successfully availed herself of that process and ultimately obtained all of the information concerning her administrative complaint that was within the EPA's possession.

Alternatively, Plaintiff may intend to assert a violation of her due process right of access to the court based on Hoyt's allegedly improper withholding of agency records.  Plaintiff asserts in her brief that, "it appears that Hoyt's refusal to surrender the documents … was a bad faith effort … to deter Plaintiff from filing this complaint against the Bentz Defendants and/or from having any constitutional due process rights whatsoever for her injuries."  (Pl.'s Resp. to Summ.

Judg. at 6.)   Although the Due Process Clause affords citizens a constitutionally-protected right of access to the courts, to prevail on such a claim the plaintiff must show actual injury.  *Lewis v. Casey*, 518 U.S. 343, 349–52 (1996).  Such an injury occurs when the plaintiff "shows that an actionable claim ... which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Id*. at 356.  Plaintiff has not alleged any facts that could plausibly establish such a claim.

Furthermore, because of the comprehensive scheme which FOIA establishes, including the availability of appropriate injunctive relief, federal courts have held that due process deprivations cannot be premised on an alleged FOIA violation.  *See, e.g., Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771, 777 (D.C. Cir. 2002) (holding that "the comprehensiveness of FOIA precludes the creation of a *Bivens* remedy" for an alleged Fifth Amendment due process violation); *Hays v. Transportation Sec. Admin.,* Civ. No. 11-3198, 2014 WL 1512252 at *3 (C.D. Cal. Mar. 11, 2014) ("the mishandling [of] a FOIA request does not rise to the level of a constitutional [due process] claim under *Bivens*"); *Olszowy v. DeWitt*, Civ. No. 9:09-1662, 2010 WL 5479663 at *5 (D.S.C. Sept. 17, 2010) ("a violation of an [sic] FOIA law does not amount to a violation of a constitutional right"); *Kroposki v. F.A.A.*, Civ. No. 3:08CV01519, 2009 WL 2710223 at *2 (D. Conn. Aug. 26, 2009) (noting that federal courts have declined to recognized a *Bivens* remedy against federal officials in cases involving FOIA).

Plaintiff also cannot state a viable due process claim premised upon the Federal Defendants' failure to enforce the environmental laws to her satisfaction.  In *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005)*,* the Court held that an individual did not have a "property interest" in police enforcement of a state-issued restraining order for purposes of her

due process claim.  *Id.* at 768.  In discussing the parameters of due process protection under the Fourteenth Amendment, the Supreme Court explained that:

> The procedural component of the Due Process Clause does not protect everything that might be described as a "benefit":  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).  Such entitlements are, "'of course, ... not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Paul v. Davis*, 424 U.S. 693, 709, 96 S. Ct. 1155, 47 L.Ed.2d 405 (1976) (*quoting Roth, supra*, at 577, T92 S. Ct. 2701); *see also Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L.Ed.2d 174 (1998).

> Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.  *See, e.g., Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 462–463, 109 S. Ct. 1904, 104 of L.Ed.2d 506 (1989).

545 U.S. at 756 (ellipsis in the original).  The Court analyzed the language of both the subject restraining order and the authorizing state statute in order to determine whether the statute had given the plaintiff an entitlement to enforcement of the restraining order.  The court concluded that the state had not created such an entitlement.  *Id.* at 766.

Here, Plaintiff has not even identified the source of her alleged rights under the federal environmental laws, much less has she identified any persuasive authority to support a constitutionally protected entitlement to have the EPA enforce those laws against the Bentzes.  In any event, however, the Court has identified the Toxic Substances Control Act as the relevant authority and, for the reasons previously discussed, the Court has concluded that any decision on the part of the EPA Administrator to commence, or not commence, enforcement proceedings under the TSCA is purely discretionary on the part of the Administrator.  Accordingly, Plaintiff has failed to allege a procedural due process deprivation arising from the Federal Defendants' failure to enforce the federal environmental laws.

In addition, Plaintiff's allegations cannot support a viable claim under the substantive due process component of the Fifth Amendment. To state a claim for substantive due process, "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Lear v. Zanic*, 524 F. App'x 797, 801-02 (3d Cir. 2013) (*quoting Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008)). *See County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) ("[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience ... or interferes with rights implicit in the concept of ordered liberty.") (*quoting United States v. Salerno*, 481 U.S. 739, 746, (1987)) (internal quotation marks omitted). No such deprivation is alleged against the Federal Defendants. As the Supreme Court explained in *Town of Castle Rock*, "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." 545 U.S. at 768. Similarly, the benefit that Plaintiff may receive from having the Bentzes subjected to civil enforcement proceedings does not trigger substantive due process protection. Moreover, the alleged misconduct on the part of the Federal Defendants does not state a plausible basis for a finding of "conscience shocking" behavior.

Although Plaintiff does possess a liberty interest in her bodily integrity for substantive due process purposes, Plaintiff has not alleged a violation of that right on the part of the Federal Defendants. In general, the Due Process Clause does not confer an affirmative right to governmental aid in order to protect individual from private sources of harm. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 196 (1989). Accordingly, Plaintiff's *Bivens* claims premised on the alleged violation of her due process rights will be dismissed.

*2. First Amendment Rights*

The "Damages" clause in the Second Amended Complaint also contains a conclusory averment that Plaintiff's free speech rights have been violated, without any elaboration whatsoever as to the factual underpinnings of this claim. (*See* SAC, "Damages Clause" at p. 16.) Under federal pleading standards, "a complaint that tenders 'naked assertion[s]' devoid of 'further factual enhancement' will not survive dismissal; rather, 'a [successful] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Johnson v. Philadelphia Housing Authority*, 448 F. App'x 190, 193 (3d Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) and *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)) (alterations in the original) (internal quotation marks omitted).

Construing the Second Amended Complaint liberally, it appears that Plaintiff may be claiming that the EPA permitted the Bentzes to retaliate against her for the filing of her administrative complaint by virtue of the Agency's failure to complete its administrative investigation or to impose any administrative penalties upon the Bentzes. (*See* SAC, "Relief" ¶ 90 ("The Bentz Defendants were allowed by EPA to retaliated [sic] against Plaintiff for reacting emotionally and physically in an effort to cover up the negligent and dangerous acts."); *id.* at ¶ 107 ("Plaintiff was slandered and refused 800.00 security deposits [sic] based upon retaliatory lies because she reported the Defendants to the EPA.").) If indeed Plaintiff is attempting to pursue this theory, her claim cannot survive a Rule 12(b)(6) dismissal because the Bentzes are not government actors, and Plaintiff's retaliation claim cannot be premised on the Federal Defendants' failure to protect Plaintiff from the Bentzes' alleged retaliatory acts.

*3. Equal Protection*

37

The Second Amended Complaint also purports to allege a violation of Plaintiff's right to equal protection under the law. The Equal Protection component of the Fifth Amendment's Due Process Clause prohibits the federal government from enforcing laws in an invidiously discriminatory manner. *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977) (discussing equal protection under the Fourteenth Amendment). To state a valid equal protection claim, a plaintiff must allege that he "receiv[ed] different treatment from that received by other individuals similarly situated." *Gomez v. Feissner*, 474 F. App'x 53, 57-58 (3d Cir. 2012) (*quoting Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980)); *Johnson v. Philadelphia Housing Authority*,448 F. App'x 190, 193 (3d Cir. 2011) (*citing Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)). If a distinction between persons does not implicate a suspect or quasi-suspect class, government action will be upheld if it is rationally related to a legitimate state interest. *See Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Under this standard, an equal protection claim can be brought by a "class of one," meaning a plaintiff alleging that she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

Plaintiff's Second Amended Complaint is devoid of any factual allegations that might elucidate her equal protection theory. In her brief in opposition to the Federal Defendants' motion, she complains that the EPA refused to sanction the Bentzes "as it did in many other cases that are the same as Plaintiff's." (Pl's Br. in Resp. to Summ. Judg. at 4.) She further elaborates that "Landau, Jaun [sic] Hernandez, and Lester Sypes were all penalized for failure to provide lead hazards pamphlets, and for uncertified renovations, but the Bentz' [sic] were not even after 6 months went by." (*Id.* at 4 n.9.) Plaintiff cannot state a claim in her brief opposing

summary judgment.  *Nykiel v. Borough of Sharpsburg*, 778 F. Supp. 2d 573, 587 (W.D. Pa. 2011.) Nevertheless, even if these statements had been properly pled, Plaintiff still would not make out an equal protection claim.[18] Plaintiff does not provide any information or averments concerning these individuals or the circumstances under which they were reportedly "penalized." Because Plaintiff has failed to offer any non-conclusory averments or evidence that could support a plausible violation of her equal protection rights, the claim must be dismissed.

D. Plaintiff's Negligence Claims

Counts 1 and 2 of the Second Amended Complaint assert claims for negligence and negligent infliction of emotional distress, respectively.  These claims appear to be directed against the Bentzes based on the following alleged acts or omissions:  (i) failing to provide a pamphlet about lead paint and mold dust or otherwise inform Plaintiff that, due to the age of the building, there could be lead paint or lead dust in her apartment; (ii) refusing to fix a broken drain pipe, which led to mold growth within her apartment; (iii) failing to properly abate mold and lead paint dusts after being informed that Plaintiff was allergic to these substances; (iv) stating that Plaintiff's face would be "rubbed in" the mold and lead paint dust; (v) removing the mold and lead paint in a negligent manner, in the presence of Plaintiff, on the verge of her departure, and without the benefit of a professional certified in mold and lead paint abatement; (vi) distributing the mold and lead paint scrapings near the Plaintiff's ventilation system; (vii) failing to abate a sewage problem on the premises and then falsely attributing the problem to Plaintiff; and (viii) falsely stating that Plaintiff was mentally ill because of the fact that she opted

---

[18] Given the Court's analysis that Plaintiff would not make out an equal protection claim even if she had pled these additional facts in her Second Amended Complaint rather than in her brief, the Court will not grant leave to amend, as amendment would be futile. *See White v. Jewish Association on Aging*, Civ. No. 13-344, 2013 WL 5963128, at *7 (W.D. Pa. Nov. 7, 2013) (Fischer, J.).

to wear a dust mask. (*See generally* SAC, "Statement of Claims" ¶¶ 1–2; "Count One" ¶¶ 1–46; "Count Two" ¶¶ 47-60.) Because this alleged misconduct does not involve any malfeasance or nonfeasance on the part of the EPA or Hoyt, it cannot form the basis of any claims directed against the Federal Defendants for negligence or negligent infliction of emotional distress.

To the extent Plaintiff attributes any negligent conduct to the Federal Defendants in this case, it consists of their failure to enforce the environmental laws to Plaintiff's satisfaction and their failure to respond to Plaintiff's FOIA request in a timely fashion. (*See* SAC, "Count Three" ¶ 75; *id.* at "Count Four" ¶ 85; *see also* Pl's Br. in Opp. to Defs.' Mot. [Docket No. 50] at 2; *id.* at 4.) Insofar as Plaintiff is attempting to assert common law negligence claims against either or both of the Federal Defendants based on these allegations, Plaintiff's claims will be dismissed.

To begin, any claims against the EPA based on negligent conduct are barred by the doctrine of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.") (citations omitted); *Clinton County Com'rs v. U.S. E.P.A.*, 116 F.3d 1018, 1025 (3d Cir. 1997) ("Because EPA is an instrumentality of the federal government, it is entitled to sovereign immunity from suit."). A waiver of the federal government's sovereign immunity must be "unequivocally expressed in statutory text." *Lane v. Pena,* 518 U.S. 187, 192 (1996). Plaintiff has the burden to establish such a waiver, *see Malone v. Bowdoin,* 369 U.S. 643, 645 (1962), and she has not done so in this case.[19]

---

[19] In response to the Federal Defendants' sovereign immunity argument, Plaintiff points to cases addressing Eleventh Amendment immunity in the context of § 1983 lawsuits against state officials. (*See* Pl's Resp. to Summ. Judg. [Docket No. 50] at 3 n.2, 3, & 5 (*citing Kentucky v. Graham,* 473 U.S. 159, 165 (1995); *Hafer v. Melo*, 502 U.S. 21 (1991); *Oklahoma City v. Tuttle,* 471 U.S. 808 (1985)).) As these cases recognize, state officials may be sued in their personal capacities for damages, or in their official capacities for prospective injunctive relief, without violating the Eleventh Amendment. *See Hafer,* 502 U.S. at 30-31 (noting that "the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983"); *Kentucky*

In fact, the United States has not waived its sovereign immunity with respect to common law negligence claims, except to the extent provided in the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.* "By enacting the Federal Tort Claims Act, Congress did waive the United States' sovereign immunity under very limited circumstances for claims against the federal government arising from torts committed by federal employees who were acting within the scope of their employment." *Searles v. Toledo Area Sanitary Dist.*, Civ. No. 3:13-0966, 2013 WL 3772481 at *7 (N.D. Ohio July 16, 2013) (citing 28 U.S.C. §§ 1346(b)(1), 2679(d)(1); *United States v. Orleans*, 425 U.S. 807 (1976)). One such limiting circumstance is that FTCA claims can be brought only against the United States itself, not the agency or agent which is alleged to have acted tortiously. *See* 28 U.S.C. § 1346(b), § 2679(a), (b)(1), (d)(1). Consequently, "an action against the United States under the Federal Tort Claims Act provides the exclusive remedy for nonconstitutional torts based on the 'negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Couden v. Duffy*, 446 F.3d 483, 498 n.10 (3d Cir. 2006) (citing 28 U.S.C. § 2679(b)(1)); *Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) (same).

Here, Plaintiff does not dispute, and in fact concedes, that Hoyt was acting within the scope of her employment for purposes of this lawsuit. (*See* Pl's Br. Opp. to Federal Defs.' Motion to Dismiss or for Summary Judg. at 14-15 (asserting that "Hoyt is a federal employee" and her alleged wrongful conduct "was done in the scope of Hoyt's EPA employment."). Thus, the FTCA provides the exclusive remedy for Hoyt's allegedly negligent conduct. *See* 28 U.S.C.

*v. Graham*, 473 U.S. at 167 n. 14 (noting that official-capacity actions for prospective relief are not treated as actions against the State for purposes of Eleventh Amendment immunity) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Plaintiff also points to the statutory waivers of sovereign immunity set forth in the FOIA. (*See* Pl.'s Resp. to Summ. Judg. at 3-4.) These limited waivers of sovereign immunity have no applicability with respect to claims sounding in negligence.

§ 2679(b)(1) (precluding "[a]ny other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee"). *See also Osborn v. Haley*, 549 U.S. 225, 229 (2007) ("The Federal employees Liability Reform and Tort Compensation Act of 1988, commonly referred to as the Westfall Act [and codified at 28 U.S.C. § 2679(b)(1)], accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties.") (citation omitted).

Notably, Plaintiff has not asserted a cause of action under the FTCA, nor has she named the United States as a Defendant. Even if she had, however, dismissal of the claim would be required. The United States' consent to suit under the FTCA is conditioned on certain jurisdictional prerequisites, including the mandatory requirement that the plaintiff's tort claim be "presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). This exhaustion requirement is jurisdictional in nature and cannot be waived; consequently, a plaintiff's failure to timely exhaust her administrative remedies requires that the case be dismissed for lack of jurisdiction. *Gary v. F.T.C.*, 526 F. App'x 146, 149 (3d Cir. 2013) (*citing Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003)). This Court is without authority to extend the waiver of immunity beyond what Congress intended. *United States v. Kubrick*, 444 U.S. 111, 118 (1979).

In this case, Defendants have submitted a declaration from Richard D. Feldman, the Claims Officer and Assistant General Counsel of the Claims, Property, and Appropriations Law Practice Group in the Civil Rights and Finance Law Office of EPA's Office of General Counsel. (Feldman Decl. [Docket No. 44-5] ¶ 1.) Mr. Feldman's declaration states that he is responsible for "the processing, supervision, monitoring, and resolution of all administrative claims

presented to EPA" that arise under the FTCA. (Feldman Decl. ¶ 2.) He is also responsible for "oversee[ing] the maintenance of EPA's claims records for the Administrator of the EPA." (*Id.*) Mr. Feldman's declaration establishes that Plaintiff has not filed any administrative claim with the EPA relative to the subject matter of this litigation. (*Id.* at ¶¶ 3–4.) Plaintiff does not dispute this fact in her various submissions to the Court. Accordingly, Plaintiff has not satisfied the jurisdictional prerequisites for a valid FTCA claim premised on her averments of negligent conduct.

In addition, the Federal Defendants correctly observe that Plaintiff has not alleged a viable cause of action for negligence or negligent infliction of emotional distress under Pennsylvania law. The elements of a negligence claim under Pennsylvania law are: (i) the existence of a duty imposed by law or a recognized standard of care, (ii) breach of that duty, (iii) proximate cause, and (iv) damages. *Scampone v. Highland Park Care Center, LLC*, 57 A.3d 582, 596–97 (Pa. 2012). The negligent conduct that Plaintiff attributes to the Federal Defendants in this case consists of the EPA's failure to enforce the environmental laws to Plaintiff's satisfaction and Hoyt's failure to respond to Plaintiff's FOIA request in a timely fashion.

To the extent Plaintiff is complaining about the Federal Defendants' failure to commence enforcement proceedings, Plaintiff has failed to allege any duty of care on the part of the EPA or Hoyt. For the reasons previously discussed, Congress has granted the EPA Administrator considerable discretion in determining how best to enforce the provisions of the TSCA, and this extends to decisions as to whether to commence enforcement proceedings. Accordingly, no viable claim for negligence can be stated on this basis. *See Karpf v. Massachusetts Mut. Life Ins. Co.*, Civ. No. 10–1401, 2014 WL 1259605 at *7 (E.D. Pa. Mar. 27, 2014) ("If the law does not impose a duty on defendants to act under a certain set of circumstances, a claim for negligence

will not survive.") (*quoting Emerson v. Adult Cmty. Total Servs., Inc.*, 842 F. Supp. 152, 155 (E.D. Pa. 1994)).

To the extent Plaintiff is asserting negligence based on the handling of her FOIA request, it is clear from Plaintiff's averments that such negligence did not proximately cause her harm. According to the Second Amended Complaint, Plaintiff incurred her injuries as the result of having allegedly been exposed to mold and lead paint dust during her tenancy at 226 East End Avenue, especially from July 24, 2012 up to the time she moved out one week later.  (SAC, "Relief" ¶ 92 ("Plaintiff had to stay in that apartment until she was able to move out from on or about 7/24/2012 through 7/31/12 breathing in thick gulps of lead and mold dusts.").)  Because any negligence on the part of the Federal Defendants did not arise until after Plaintiff had already been exposed to the allegedly toxic dusts, it cannot serve as the proximate cause of her harm.[20] *Wright v. Eastman*, 63 A.3d 281, 290 (Pa. Super. Ct. 2013).

A claim for negligent infliction of emotional distress is restricted to four factual circumstances, *to wit*: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."  *See Karpf v. Massachusetts Mut. Life Ins. Co.*, Civ. No. 10–1401, 2014 WL 1259605 at *7 (E.D. Pa. Mar. 27, 2014) (*quoting Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197–98 (Pa. Super. Ct. 2008), *order aff'd by equally divided court*, 36 A.3d 83 (Pa. 2011)).  None of these various situations have any application with

---

[20]  Plaintiff also suggests that the EPA's failure to enforce the laws resulted in potential injury to a young child that was moving into the Plaintiff's apartment after she vacated it.  However, Plaintiff lacks standing to assert a negligence claim premised on injuries caused to third parties.

respect to the Federal Defendants' conduct as pleaded in the Second Amended Complaint. Accordingly, Counts 1 and 2 of the Second Amended Complaint must be dismissed.

## V. Conclusion

For all of the foregoing reasons, the Federal Defendants' motion to dismiss or, in the alternative, for summary judgment, will be granted. Because the deficiencies highlighted by this Court are incapable of being cured by way of further amendment, the dismissals shall be with prejudice. An appropriate order follows.

*/s/ Nora Barry Fischer*

Nora Barry Fischer
United States District Judge

Date: June 3, 2014

cc: All counsel of record
(via CM/ECF)

Jacquelyn B. N'Jai
P.O. box 10133
Pittsburgh, PA 15232
(via regular and certified mail)