# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACQUELYN B. N'JAI, ) <br> ) <br>  Plaintiff, ) <br> v. ) <br> ) <br> GARY BENTZ, CONNIE BENTZ, AND C.A. ) <br> BENTZ LLC, ) <br> ) <br>  Defendants. ) | Civil Action No. 13-1212 <br> Judge Nora Barry Fischer |

## **MEMORANDUM OPINION**

### I. INTRODUCTION

Plaintiff Jacquelyn B. N'Jai ("Plaintiff") initiated this civil action on August 22, 2013 against her former landlords, Gary and Connie Bentz, and their real estate company, C.A. Bentz LLC ("Defendants"). In the operative complaint,[1] Plaintiff asserts common law claims based on negligence (Count I), negligent infliction of emotional distress (Count II), private nuisance (Count V), breach of contract (Count VI), and breach of the implied warranty of habitability (Count VII). She also asserts federal claims pursuant to the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d (Count III), and the Toxic Substances Control Act, 15 U.S.C. § 2619(a)(1)-(2) (Count IV).

Presently pending before the Court is Defendants' Motion for Partial Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Docket No. 156), Plaintiff's Brief in Opposition (Docket No. 165), Defendants' Reply Brief (Docket No. 167), and Plaintiff's Sur-

---

[1] In her Third Amended Complaint, filed on December 11, 2014 (Docket No. 113), Plaintiff incorporates by reference the negligence and negligent infliction of emotional distress claims set forth in her Second Amended Complaint (Docket No. 11).

1

Reply Brief (Doc. No. 171). For the reasons set forth below, Defendants' Motion for Judgment on the Pleadings will be granted in part and denied in part.

**II.   FACTUAL BACKGROUND**

From 2008 through 2012, Plaintiff rented and resided in an apartment owned by the Defendants and located at 226 East End Avenue, Pittsburgh, Pennsylvania. (Docket No. 11 at ¶¶ 1, 3). During her time in the apartment, Plaintiff frequently observed water discharging from a broken drainpipe into the apartment, creating a severe mold infestation. (*Id*. at ¶ 5-6; Docket No. 113 at ¶¶ 27, 40-41, 51). Instead of correcting the problem, Defendants ignored Plaintiff's complaints and forced her to attempt to remediate the mold damage on her own. (Docket No. 113 at ¶ 29-30, 42). Defendants also concealed the fact that the walls in the apartment contained mold and lead paint. (*Id*. at ¶¶ 1b-4, 6b, 17, 20).

On or about July 24, 2012, Gary Bentz appeared unannounced at the apartment and began scraping lead paint and mold from the walls of the apartment. (Docket No. 11 at ¶ 8). At the time, Plaintiff was preparing to move out. (*Id*.). Plaintiff objected to Bentz's renovations because she felt they were unsafe and should have been performed by a certified lead-paint remediation specialist. (*Id*. at ¶ 10, 15). She informed Bentz that she suffered from dust allergies and complained that dust from the scrapings was falling into her food, appliances, and furniture. (*Id*. at ¶¶ 12, 13). Bentz laughed at her and stated, "We are going to rub your face in it!" (*Id*. at ¶ 10). He then swept remnants of lead paint and dust into the apartment's vents, forcing them into the apartment's ventilation system. (*Id*. at ¶ 19). This caused the dust to become airborne and prevented Plaintiff from using her air conditioning during the remainder of the month of July. (*Id*.; Docket No. 113 at ¶ 33b). As a result, Plaintiff suffered severe cramping of her toes, spasms in her extremities, burning in her eyes, choking and gagging, and

2

uncontrollable coughing. (Docket No. 11 at ¶¶ 21-22). Plaintiff was also forced to move into a hotel and utilize a storage unit until she could find another apartment. (*Id*. at ¶ 29).

In the meantime, Plaintiff contacted the Environmental Protection Agency ("EPA") through a hotline and was allegedly informed that Bentz's actions were in violation of federal environmental laws. (Id at ¶¶ 24-25, 27). Thereafter, Defendants began to retaliate against her by showing up unannounced at the apartment, giving keys to her apartment to other tenants, making defamatory statements about her, and refusing to return her security deposit. (*Id*. at ¶¶ 33-38). They also accused her of fabricating her report to the EPA and of being mentally ill. (*Id*. at ¶¶ 32, 44-46).

### III. PROCEDURAL HISTORY

Plaintiff initiated the instant action on August 22, 2013. (Docket No. 1). She filed an Amended Complaint on September 4, 2013 (Docket No. 3) and a Second Amended Complaint on October 23, 2013. (Docket No. 11). In addition to her common law claims against the Bentz Defendants, Plaintiff asserted several federal claims against the EPA and EPA Agent Annie Hoyt. (*Id*.). On June 3, 2014, the Court dismissed the EPA and Hoyt from this action with prejudice. (Docket No. 63).

On September 23, 2014, Plaintiff filed a Motion to Amend Complaint, seeking to add several new common law and federal claims against the Bentz Defendants. (Docket No. 96). The Court granted the motion on November 20, 2014, granting Plaintiff leave to add claims based on the Residential Lead-Paint Hazard Reduction Act, the Toxic Substances Control Act, and common law claims of private nuisance, breach of contract, and breach of the implied warranty of habitability. (Docket No. 111).

Plaintiff filed her Third Amended Complaint on December 11, 2014. (Docket No. 113). Following a period of discovery, Defendants filed the instant Motion for Judgment on the Pleadings. (Docket No. 156). That motion is now fully briefed and ripe for review.

## IV.  LEGAL STANDARDS

Federal Rule of Civil Procedure 12(c) provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Judgment on the pleadings is appropriate only when the movant "'clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). Where Rule 12(c) is invoked based on the theory that the plaintiff failed to state a viable claim, federal courts apply the same standard of review applicable to Rule 12(b)(6) motions. *See Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 166 (3d Cir. 2013) (citation omitted). Thus, in order to survive a Rule 12(c) motion, the complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Third Circuit Court of Appeals has prescribed a three-step analysis to determine whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations

omitted). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content from which to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," but the law does not impose a "probability requirement." *Id*. "Although factual allegations must be enough to raise a right to relief above the speculative level, ... a plaintiff need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (internal quotations, citations, and alterations omitted). This third step of the analysis is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679).

## V. DISCUSSION

In the instant motion, Defendants seek judgment on the pleadings with respect to three aspects of Plaintiff's Third Amended Complaint: her request for punitive damages, her request for treble damages, and her claim for relief pursuant to the Toxic Substances Control Act. Each will be discussed in turn.

### A. Punitive Damages (All Counts)

At the conclusion of each count of her Third Amended Complaint, Plaintiff requests "any that apply" from the following list of damages:

    a). Actural [sic] damages for loss of property and money

    b). Restatement, Second, Torts, Section 12A

5

> c). Other Compensatory damages
>
> d). Punitive damages (Pain and suffering)
>
> e). Consequential Damages
>
> f). Continuing Damages/Prosective [sic] damages
>
> g). General damages
>
> h). Pecuniary damages
>
> i). Treble Damage

(Docket No. 113 at ¶¶ 15, 25, 39, 48a, 53b). Defendants contend that Plaintiff's request for punitive damages is unwarranted because she has failed to factually support that request with detailed allegations of outrageous conduct.

As an initial matter, the Court notes that punitive damages cannot be recovered for the breach of a contract in Pennsylvania. *Allegrino v. Conway E & S, Inc.*, 2010 WL 1854125, at * (W.D. Pa. May 5, 2010) (citing *Ash v. Contil Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007) (observing that Pennsylvania law typically only provides for punitive damages in tort actions)). The same is true of Plaintiff's claim that Defendants breached the implied warranty of habitability. *See McIntyre ex rel. Howard v. Phila. Housing Auth.*, 816 A.2d 1204, 1207-08, 1212 (Pa. Commw. Ct. 2003) ("We hold that breach of the implied warranty of habitability is a contract claim for which only contract remedies are available."); *Fair v. Negley*, 390 A.2d 240, 242 (Pa. Super. Ct. 1978) ("[S]tandard contract remedies are available should appellants prove that appellees breached the implied warranty of habitability."). Judgment will be entered in favor of Defendants as to the punitive damage requests in Counts VI and VII.[2]

---

[2] Punitive damages are similarly unavailable for Plaintiff's federal claims. The Lead-Paint Hazard Reduction Act set forth at Count III explicitly provides for treble damages, rather than punitive damages. *See* 42 U.S.C. § 4852d(b)(3). As will be discussed at length below, a private citizen may not sue for monetary relief under the Toxic Substances Control Act.

6

With respect to Plaintiff's negligence-based claims, it is well-settled in Pennsylvania that "punitive damages may be awarded for negligent conduct that is outrageous due to the defendant's evil motives or 'reckless indifference to others.'" *Allegrino*, 2010 WL 1854125 at *8 (quoting *Sabric v. Martin*, 2010 WL 569574, at *6 (M.D. Pa. Feb. 12, 2010)). Punitive damages are "penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citing *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (Pa. 1991)). When assessing the propriety of the imposition of punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (quoting *Feld v. Merriam*, 485 A.2d 742, 748 (Pa. 1984)).

In the instant case, Plaintiff alleges that Defendants were repeatedly advised of the existence of a damaged drain pipe that funneled water into her apartment and caused prodigious amounts of mold to form. (Docket No. 11 at ¶¶ 5-7; Docket No. 113 at ¶ 27). She also contends that Defendants intentionally failed to disclose the existence of lead paint in the walls of her apartment, going so far as to paint over lead, mold, and other hazards to hide them from her and other tenants. (Docket No. 113 at ¶ 6b, 17, 20). Finally, she asserts that Gary Bentz scraped lead and mold from her walls and intentionally dumped them into her ventilation system, causing the dust from those scrapings to become airborne, triggering her allergies, and forcing her to shut off her air conditioning in the middle of the summer. (Docket No. 11 at ¶¶ 10-13, 16, 19-20). These allegations are not mere conclusory statements that the Defendants were willful, wanton, or reckless. *See, e.g.*, *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447 (Pa. Super. Ct. 1987) (affirming trial court's dismissal of punitive damages claim because plaintiff had pleaded

"nothing but conclusory statements that the conduct of the defendants was 'wilful, wanton, and reckless' . . . without allegations of fact in support thereof."). To the contrary, Plaintiff has provided concrete facts suggesting that Defendants were aware of significant issues affecting the safety and habitability of the apartment and ignored, concealed, and ultimately exacerbated those issues. A factfinder could readily conclude that punitive damages are warranted based on these allegations of outrageous and reckless conduct, if proven at trial. *See*, *e.g.*, *Feld*, 485 A.2d at 746-47 (stating that when a landlord refuses to correct a known physical property defect, "the landlord has effectively perpetuated the risk of injury by refusing to correct [the] known and verifiable defect."); *Ruehl v. S.N.M. Enterprises, Inc.*, 2015 WL 2374256, at *3-4 (M.D. Pa. May 18, 2015) (defendants' intentional concealment of stickers providing safety information at a hotel was sufficiently "willful, wanton or reckless" to support a claim for punitive damages at the pleading stage). Consequently, Defendants' motion for judgment on the pleadings will be denied with respect to the punitive damage demands contained in Counts I, II, and V.

### B. Treble Damages (Counts I, II, V, VI, and VII)

As noted above, Plaintiff also seeks treble damages for each of her claims. (Docket No. 113 at ¶¶ 15, 25, 39, 48a, 53b). However, it is axiomatic that treble damages are only available where they are authorized by a statute. *Bangert v. Harrism*, 553 F.Supp. 235, 239 (M.D. Pa. 1982) (noting that "express authorization by statute is mandatory" for recovery of treble damages under Pennsylvania law) (citing *Goldberg v. Friedrich*, 124 A. 186 (Pa. 1924) ("[W]here suit is brought for a penalty, the statement must refer to the statute authorizing its collection.")). *See also Rock v. Voshell*, 2006 WL 1409734, at *10 (E.D. Pa. May 18, 2006) (striking request for punitive damages because "without specific statutory authorization in Pennsylvania, treble damages . . . cannot be recovered."); *Ingram v. Amrhein*, 2011 WL 1743772, at *3 (W.D. Pa.

8

May 04, 2011) (granting motion to strike request for treble damages in a fraud action "because there is simply no basis for the request"). Because the claims set forth in Counts I, II, V, VI, and VII each derive from common law, rather than statute, there is no basis for an award of treble damages for any of those claims. As a result, Defendants are entitled to judgment in their favor with respect to the treble damage claims in each of those counts.

### C. Toxic Substances Control Act (Count IV)

In Count IV, Plaintiff alleges that Defendants violated Section 402(a) of the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2682(a)(1), by failing to disclose the existence of lead and mold in the apartment and by failing to use properly accredited and certified contractors to perform lead paint remediation. (Docket No. 113 at ¶¶ 17-24). In broad brush, the TSCA provides for the monitoring and regulating of toxic substances that may "present an unreasonable risk of injury to health or the environment," 15 U.S.C. § 2601(b)(2), and confers upon the EPA the power to collect data on hazardous substances and to enforce the provisions of the Act. *See* 15 U.S.C. § 2601. Section 402(a) of the TSCA specifically directs the EPA to "promulgate final regulations governing lead-based paint activities to ensure that individuals engaged in such activities are properly trained; that training programs are accredited; and that contractors engaged in such activities are certified." 15 U.S.C. § 2682(a)(1).

Plaintiff's TSCA claim fails for several reasons. First, although 15 U.S.C. § 2619(a) does provide a private right of action to enforce violations of the Act, it is well-settled that "the Toxic Substances Control Act does not permit private citizens to pursue either civil penalties . . . or compensation for personal injuries." *Cudjoe v. Dep't of Veterans Affairs*, 426 F.3d 241, 248 n.5 (3d Cir. 2005). Rather, "[t]he only citizens' suits allowed under 15 U.S.C. § 2619 are to enjoin violations of the Toxic Substances Control Act, not for money damages." *Id*. In her prayer for

relief, Plaintiff requests "treble damages, actual damages, punitive damages for pain and suffering, and any compensatory and injunctive damages available to her – along with '$10,000.00 for each violation'" of the Act. (Docket No. 113 at ¶ 25). However, while Plaintiff mentions "injunctive damages" in connection with her TSCA claim, she has not pleaded any facts to support a request for injunctive relief. Indeed, she does not even indicate what conduct she seeks to enjoin.[3] It appears that she simply inserted the phrase "injunctive damages" into her complaint in the course of reciting a laundry list of potential remedies, each of which is otherwise directed towards monetary relief. This type of pleading falls well short of the specificity requirements of *Iqbal* and *Twombley*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Secondly, the invoked subsection of the Act – Section 402(a) – is directed entirely at the EPA, an entity that is no longer a party to this action. Section 402(a) directs the EPA to promulgate regulations governing lead-based paint activities, establishing standards for performing lead-based paint activities, and establishing accredited training programs for contractors to become certified in lead-based paint activities. 15 U.S.C. § 2682(a)(1); *N'Jai v. U.S. E.P.A.*, 2014 WL 2508289, at *7 (W.D. Pa. June 04, 2014). Nothing contained in Section 402(a) is directed towards conduct by private citizens such as the Defendants.

Finally, even if Plaintiff could identify a portion of the TSCA that had been violated by Defendants, she concedes in the Third Amended Complaint that she no longer resides in the apartment and is no longer exposed to the harmful activities of the Defendants. (Docket No. 11 at ¶ 3; Docket No. 113 at ¶¶ 11, 36). "In order to establish a claim for injunctive relief in a

---

[3] Plaintiff's brief in response fails to shed any light on this request, stating only that "[if] Plaintiff does not get any money, she as a 'private attorney general,' [on] behalf of the EPA can stop the Defendants from ever willfully violating the Federal, state, and local Acts and then seeking to lie, perjure, hide, [and] not cooperate . . ." (Docket No. 165 at 13). She also erroneously suggests that she might be able to obtain money damages and give them to the Department of the Treasury. (*Id*. at 17).

federal forum, a plaintiff must show that he or she is likely to suffer future injury from the defendant's illegal conduct." *Bostrom v. N.J. Div. of Youth and Family Services*, 969 F.Supp.2d 393, 417 (D.N.J. 2013) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.")). In other words, the plaintiff must show a "real or immediate threat that she will be wronged again – a 'likelihood of substantial and irreparable injury.'" *Lyons*, 461 U.S. at 111 (internal citation omitted). Plaintiff has not pleaded any facts that might satisfy this standard.

For the foregoing reasons, Plaintiff's TSCA claim will be dismissed with prejudice.

**VI. CONCLUSION**

For all of the foregoing reasons, Defendants' Motion for Partial Judgment on the Pleadings (Docket No. 156) is GRANTED in part and DENIED in part. Judgment will be entered in favor of Defendants with respect to the TSCA claim set forth in Count IV, Plaintiff's request for punitive damages with respect to Counts VI and VII, and Plaintiff's request for treble damages with respect to Counts I, II, V, VI and VII. Count IV is dismissed with prejudice. Defendants' motion is otherwise denied.

An appropriate order follows.

                                                */s/ Nora Barry Fischer*
                                                Nora Barry Fischer
                                                United States District Judge

Date: September 1, 2015

cc/ecf: All counsel of record

       Jacquelyn B. N'Jai
       nj0216@aol.com
       and
       P.O. Box 10133
       Pittsburgh, PA  15232
       (regular mail)