**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JACQUELYN B. N'JAI, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 13-1212 |
| | ) | Judge Nora Barry Fischer |
| GARY BENTZ, CONNIE BENTZ, AND C.A. | ) | |
| BENTZ LLC, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

Plaintiff Jacquelyn B. N'Jai ("Plaintiff") initiated this civil action on August 22, 2013 against her former landlords, Gary and Connie Bentz, and their real estate company, C.A. Bentz LLC ("Defendants"). In the operative complaint,[1] Plaintiff asserted common law claims based on negligence (Count I), negligent infliction of emotional distress (Count II), private nuisance (Count V), breach of contract (Count VI), and breach of the implied warranty of habitability (Count VII). She also asserted federal claims pursuant to the Residential Lead-Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d (Count III), and the Toxic Substances Control Act, 15 U.S.C. § 2619(a)(1)-(2) (Count IV).

Presently pending before the Court are Motions for Summary Judgment filed by Defendant C.A. Bentz, LLC (Docket No. 267) and Defendants Gary and Connie Bentz (Docket No. 277), as well as a Cross-Motion for Summary Judgment filed by Plaintiff (Docket No. 285).

---

[1] In her Third Amended Complaint, filed on December 11, 2014 (Doc. No. 113), Plaintiff incorporates by reference the negligence and negligent infliction of emotional distress claims set forth in her Second Amended Complaint (Doc. No. 11).

For the reasons set forth below, Defendants Gary and Connie Bentz's Motion for Summary Judgment will be GRANTED in part and DENIED in part; Defendant CA Bentz, LLC's Motion for Summary Judgment will be GRANTED; and Plaintiff's Cross-Motion for Summary Judgment will be DENIED.

## II.   FACTUAL BACKGROUND

From 2008 through 2012, Plaintiff rented and resided in an apartment owned by the Defendants and located at 226 East End Avenue, Pittsburgh, Pennsylvania. (Docket No. 11 at ¶¶ 1, 3). During her time in the apartment, Plaintiff complained that she frequently observed water discharging from a broken drainpipe into the apartment, creating a severe mold infestation. (*Id*. at ¶ 5-6; Docket No. 113 at ¶¶ 27, 40-41, 51). She also complained that the walls in the apartment contained mold and lead paint. (*Id*. at ¶¶ 1b-4, 6b, 17, 20). Finally, she objected to repairs performed by Gary Bentz on or about July 24, 2012, characterized by the Plaintiff as "unlawful renovations," that caused lead and mold dust to permeate throughout the apartment. (Docket No. 11 at ¶¶ 8-15).

Based on her alleged exposure to lead and mold, Plaintiff asserts that she suffered severe cramping of her toes, spasms in her extremities, burning in her eyes, choking and gagging, and uncontrollable coughing. (Docket No. 11 at ¶¶ 21-22). Plaintiff was also forced to move into a hotel and utilize a storage unit until she could find another apartment. (*Id*. at ¶ 29).

In the meantime, Plaintiff contacted the Environmental Protection Agency ("EPA") through a hotline and was allegedly informed that Bentz's actions were in violation of federal environmental laws. (*Id*. at ¶¶ 24-25, 27). The EPA investigated and issued a Notice of Noncompliance finding that Gary Bentz had violated the disclosure requirements of the Residential Lead-Based Paint Hazard Reduction Act by failing to inform tenants of the

possibility of lead-based paint in the apartment, as is required for any residential unit built prior to 1978. (Docket No. 291-2).

III.   PROCEDURAL HISTORY

Plaintiff initiated the instant action on August 22, 2013. (Docket No. 1). She filed an Amended Complaint on September 4, 2013 (Docket No. 3) and a Second Amended Complaint on October 23, 2013. (Docket No. 11). In addition to her common law claims against the Bentz Defendants, Plaintiff asserted several federal claims against the EPA and EPA Agent Annie Hoyt. (*Id.*). On June 3, 2014, the Court dismissed the EPA and Hoyt from this action with prejudice. (Docket No. 63).

On September 23, 2014, Plaintiff filed a Motion to Amend Complaint, seeking to add several new common law and federal claims against the Bentz Defendants. (Docket No. 96). The Court granted the motion on November 20, 2014, granting Plaintiff leave to add claims based on the Residential Lead-Paint Hazard Reduction Act, the Toxic Substances Control Act, and common law claims of private nuisance, breach of contract, and breach of the implied warranty of habitability. (Docket No. 111).

Plaintiff filed her Third Amended Complaint on December 11, 2014. (Docket No. 113). Following a period of discovery, Defendants filed a Motion for Judgment on the Pleadings. (Docket No. 156). On September 1, 2015, the Court granted the motion in part and dismissed Plaintiff's claim based on the Toxic Substances Control Act (Count IV). The remaining claims form the basis for the instant Motions for Summary Judgment.

IV.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will only be denied when there is a genuine issue of material fact, i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). The mere existence of some disputed facts is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In determining whether the dispute is genuine, the court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. The court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy*, 413 F.3d at 363; *Simpson v. Kay Jewelers*, 142 F.3d 639, 643 n.3 (3d Cir. 1998) (quoting *Fuentes v. Perski*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)). In evaluating the evidence, the court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in its favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

## V. DISCUSSION

In their summary judgment motion, Defendants Gary and Connie Bentz contend that each of Plaintiff's allegations must be dismissed because she has failed to support any of her allegations by producing required expert reports. Each of her claims will be discussed in turn.

### A. Negligence (Count I)

In order to prevail on a claim for negligence in Pennsylvania, Plaintiff must establish the following elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the interests of another. *Lichtenstein v. Kidder, Peabody & Co.*, 840 F.Supp. 374; 386 (W.D. Pa. 1993); *Morena v. South Hills Health Sys.*, 462 A.2d 680, 684 n. 5 (Pa. 1983). Defendants contend that Plaintiff cannot satisfy either the third or fourth elements of her negligence claim.

In toxic tort cases, a plaintiff must demonstrate that the substance at issue "is capable of causing the alleged harm (general causation) and that the substance actually caused the injury suffered by the plaintiff (specific causation)." *Leake v. U.S.*, 843 F.Supp.2d 554, 559 (E.D. Pa. 2011); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 752 (3d Cir. 1994) (plaintiff must show "that they were exposed to the chemicals . . ., that these chemicals can cause the type of harm they suffered, and that the chemicals in fact did cause them harm."). This is typically accomplished by introducing expert testimony and scientific evidence. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) (holding that the testimony of expert witnesses was required to demonstrate both that the level of a harmful chemical in plaintiff's home was higher than normal and that exposure to that chemical made him sick); *Allen v. Pa. Engineering Corp.*, 102 F.3d 194, 199 (5th Cir. 1996) ("Scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities, are minimal facts necessary to sustain the plaintiffs' burden in a toxic tort case."); *In re Dobrowsky*, 735 F.2d 90, 93 (3d Cir. 1984) (expert testimony is required where the injury and the cause are not "obvious, natural, or probable").

Plaintiff concedes that, for various reasons, she has been unable to engage an expert witness to testify on her behalf. Docket No. 287 at 2-4. Instead, she contends that she can proceed to trial by introducing her own testimony about her injuries and allergies:

> Plaintiff is fully capable of testifying about the injuries named, and pictures, videos, factual data, medical records and the like are in abundance and within the scope of common knowledge of a laymen like her or a jury.

*Id*. at 1.

She also contends that the link between the substances in her apartment and her allergies is common knowledge that lies within the scope of any layperson:

> Plaintiff [does] not need an expert to tell her that she did or did not have an allergic reaction to the dust [Gary Bentz] and his helper caused to be air borne and then swept into [an] air vent. It is within **common knowledge** that Plaintiff knows what she is allergic to and her medical records reflect that. Plaintiff was there and Defense Counsel was not.

Docket No. 287 at 3 (emphasis in original). Finally, Plaintiff explicitly disavowed seeking any damages that might require expert testimony to support. *Id*. at 1-2 ("Plaintiff <u>DISCLAIMS ANY 'PERSONAL INJURY' DAMAGES THAT WOULD INVOKE</u> – <u>Daubert or Frye</u> requirements, needing any expert witness.").

Pennsylvania and Federal courts have consistently rejected a plaintiff's attempt to establish causation in a toxic tort case without supplying expert testimony. In *Kemmerer v. State Farm Insurance*, for example, the plaintiff returned from a vacation to find her home and belongings significantly damaged by toxic mold. *Kemmerer*, 2004 WL 87017, at *1 (E.D. Pa. Jan. 19, 2004). Although the plaintiff engaged an expert to demonstrate that the mold was toxic, she attempted to establish causation entirely through lay testimony. *Id*. at *3. The court held that she could not meet that burden in the absence of expert testimony:

To establish such an element of complex causation, however, Plaintiff must provide evidence beyond lay opinions. In a case involving complex issues of causation not readily apparent to the fact finder, plaintiff must present admissible expert testimony to carry her burden.

*Id.* (citing *Heller*, 167 F.3d at 153 (expert testimony required to establish cause of respiratory ailments allegedly stemming from chemicals in carpet).

*Ferraro v. County of Northampton* is similarly instructive. In *Ferraro*, several corrections officers filed suit alleging that they had become sick as the result of exposure to "toxic mold" within a prison. *Ferraro*, 2011 WL 10845800 (Pa. Comm. Jan. 5, 2011). The officers alleged symptoms ranging from headaches and fatigue to sinusitis and diabetes, but failed to supply any admissible expert testimony connecting those symptoms to the presence of mold in the prison. *Id.* at *5-6. The court held that they could not establish causation based only on their own depositions and proposed testimony at trial:

The Officers claim they suffer from various physical injuries and ailments, including fatigue, anxiety, depression, sleep disturbance, diabetes, and asthma. While the Officers claim that several of their doctors and psychologists indicated that their injuries and ailments could possibly be the result of mold exposure in the workplace, none of them were willing to definitively state that this was the cause or to put such an opinion in writing. Five years after this lawsuit was instituted, the Officers still have not identified a trial expert or produced a report attributing their alleged ailments and injuries to exposure to toxic mold within the Prison. The only evidence regarding their alleged exposure comes from the Officers' own deposition testimony. There are no tests, photographs, or sample studies of the mold, nor is there any evidence that the mold within the Prison was of the type, sufficient quantity or in a form which would cause harm. The only report the Officers supplied to the trial court was a draft report written by John J. Shane, M.D. (Dr. Shane), who they note will not be called as a testifying witness at trial. Dr. Shane admittedly never examined, met with, or spoke to any of the Officers, and he never visited the Prison or obtained any samples, tests, or even photographs of the mold in question. In addition, this draft report was only submitted to the trial court after summary judgment was entered and the Officers moved for reconsideration. The Officers cannot establish even a *prima facie* case without expert testimony; therefore, the County Officials were entitled to summary judgment.

*Id*. at *6 (internal citations omitted). Other courts have consistently reached the same conclusion. *See In re Zoloft (Sertalinehydrochloride) Products Liability Litig.*, 176 F.Supp.3d 483, 498-99 (E.D. Pa. 2016) (rejecting plaintiff's attempt to establish causation in a toxic tort case by "cobbl[ing] together evidence of biological plausibility, specific causation opinions based on an assumption that general causation has been established, and anecdotal evidence" instead of supplying admissible expert opinions); *Sanders v. Rosenberg*, 2008 WL 1732980, at *3 (D. N. J. Apr. 10, 2008) (plaintiffs alleging personal injuries from mold caused by leaking water could not establish either general or specific causation without expert testimony); *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 729 (5th Cir. 2009) ("[W]ithout admissible expert evidence in this toxic-tort case, Seaman cannot prove causation."); *Leake*, 843 F.Supp.2d at 564-65 (granting summary judgment on causation in a toxic-tort case based on lack of admissible expert testimony); *Hooks v. Nationwide Housing Sys.*, LLC, 2016 WL 3667134, at * (E.D. La. July 11, 2016) (granting summary judgment and describing causation as "the Achilles heel" of a toxic tort case lacking expert testimony).

Consistent with the foregoing, the Court concludes that Plaintiff cannot create a triable issue of fact in this case in the absence of expert testimony. First of all, Plaintiff is simply incorrect in asserting that a layperson can look at a photograph or video, accompanied only by her own testimony, and determine whether a speck of paint contains lead or whether a particular type of mold is harmful. Such issues are "beyond the ken of laypersons." *Smith v. Katz*, 2013 WL 1182074, at * 10 (D.V.I. Mar. 22, 2013) (granting summary judgment in a toxic mold case for lack of expert opinion as to causation).

Even if Plaintiff could establish the presence of lead paint or dangerous mold in the apartment, she has failed to adduce any sort of expert testimony to place those findings in

context for a jury. For example, Plaintiff relies heavily on the results of an independent laboratory test that allegedly confirmed the presence of lead in the apartment. Docket No. 295-22. That test, performed on an unspecified sample of material taken from the apartment, revealed that the kitchen had "5350 ppm" of lead. *Id*. However, there is no expert or scientific evidence in the record to indicate whether this level of lead is harmful or typical, or whether it is capable of causing the injuries alleged by Plaintiff. *See*, *e.g.*, *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 729 (5th Cir. 2009) ("Without expert testimony to place [other evidence] in context, [that evidence does] not demonstrate that [plaintiff] was exposed to whatever may be the allegedly harmful level of Ferox or diesel exhaust."); *Smith*, 2013 WL 1182074, at * 10 ("What is absent, however, is any expert testimony combining the correlation between [plaintiff's] injuries and her exposure, the level of mold to which she was exposed, and the level of mold exposure necessary to produce adverse health effects . . ."). Plaintiff cannot close this gap by relying entirely on her own lay testimony. *See*, *e.g.*, *In re Zoloft*, 176 F.Supp.3d at 498-99 (causation cannot be established by cobbling together lay testimony, anecdotal evidence, and general plausibility assumptions); *Kemmerer*, 2004 WL 87017, at *3 ("Plaintiff must provide evidence beyond lay opinions" to establish causation in a toxic tort case). *See also Heller*, 167 F.3d at 153 (expert testimony required to demonstrate both that the level of a harmful chemical in plaintiff's home was higher than normal and that exposure to that chemical made him sick).

Finally, even if Plaintiff could demonstrate that lead paint and dangerous mold were present in the apartment in potentially dangerous amounts, she has not provided any evidence to link her exposure to those substances to her injuries for purposes of establishing specific causation or damages. *See Smith*, 2013 WL 1182074, at *10; *Hooks*, 2016 WL 3667134, at *14 ("In a toxic mold case, a plaintiff must prove, given that the mold in question is capable of

causing harm of the type suffered, that the specific type of mold found *more likely than not caused the plaintiff's injuries in this particular case*.") (emphasis added). Nor has she adduced any evidence, beyond her own *ipse dixit* averments, to demonstrate that she was sensitive or allergic to the particular type of mold present in her apartment. *Smith*, 2013 WL 1182074, at *11 ("Further complicating causation in mold cases is the question of whether the plaintiff has a proven sensitivity or allergy to the molds to which she or he was exposed."); *Flores v. Allstate Tex. Lloyd's Co.*, 229 F.Supp.2d 697, 702 (S.D. Tex. 2002) (noting absence of reliable proof of causation where medical expert had not based "his testimony on the results of any testing done to determine whether Plaintiffs [were] allergic to any specific type of mold found in their home"). Expert testimony is critical to establishing each of these elements. *See, e.g., Young v. Burton*, 354 F. App'x 432, 433 (D.C. Cir. 2009) (noting that "the link between a potentially toxic building environment and symptoms experienced by tenants is beyond the ken of laypersons . . . [because] [j]urors would have no rational basis for evaluating whether the mold caused any medical conditions.") (internal quotations and citations omitted).

For the foregoing reasons, Plaintiff's failure to obtain expert reports or testimony is fatal to her negligence claim.[2] Summary judgment will be entered in favor of Defendants as to Count I of the Amended Complaint.

## B. Negligent Infliction of Emotional Distress (Count II)

To establish a claim of negligent infliction of emotional distress under Pennsylvania law, a plaintiff must generally proceed under one of the following four theories: (1) that the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a

---

[2] The Court also observes that Plaintiff had a blood test performed on August 21, 2014, which found that the levels of lead in her bloodstream were apparently within normal limits. Docket No. 277-3 at 12, 16. Additionally, despite her insistence that she is allergic to mold, her medical records contain no specific findings in this regard. She has not produced any evidence to suggest otherwise.

physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa. Super. 2000); *Toney v. Chester County Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008). As with a negligence claim, "[t]he element of causation lies at the heart of [the] matter." *Brown v. Phila. College of Osteopathic Medicine*, 760 A.2d 863, 868 (Pa. Super. 2000); *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 45 (Pa. Super. 2000) (noting that a plaintiff cannot prevail on a negligent infliction of emotional distress claim without satisfying the elements of a negligence action, including causation); *Foye v. Prime Care Medical*, 2015 WL 1650257, at *12 (E.D. Pa. Apr. 14, 2015) (granting summary judgment on a negligent infliction of emotional distress claim due to lack of evidence to support causation). Thus, the plaintiff must demonstrate that they suffered "*immediate* and *substantial* physical harm," *Toney*, 961 A.2d at 28 (emphasis in original), and that the physical harm was the direct result of actions attributable to the defendants. *Foye*, 2015 WL 1650257 at *12; *Shomsky v. Lutheran Welfare Servs. of Ne. PA, Inc.*, 784 A.2d 196, 200-01 (Pa. Super. 2001) (noting that the physical injury "must be directly traceable to the peril in which defendant's negligence placed the plaintiff").

As noted above, Plaintiff has not produced any admissible expert evidence to demonstrate that she suffered any physical harm as the result of any action taken by Defendants. Consequently, her negligent infliction of emotional distress claim must fail. *See, e.g.*, *Chatragadda v. Duquesne Univ.*, 2016 WL 3633077, at *4 (W.D. Pa. July 7, 2016) (granting summary judgment on negligent infliction of emotional distress claim where plaintiff "provided no medical evidence that she suffered any harm as a result of Duquesne's conduct").

### C. Residential Lead-Based Paint Hazard Reduction Act (Count III)

The Residential Lead-Based Paint Hazard Reduction Act ("RLBP Hazard Reduction Act"), 42 U.S.C. §§ 4851 *et seq*., "is a disclosure statute requiring a seller or lessor of residential target housing (1) to provide the purchaser or lessee with a lead hazard information pamphlet (as described in 15 U.S.C. § 2686); (2) to disclose the known or possible presence of lead-based paint or other lead hazards; (3) to provide information about lead hazards; and (4) to allow the purchaser or lessee a ten-day risk assessment period." *Cudjoe v. Department of Veterans Affairs*, 426 F.3d 241, 245-46 (3d Cir. 2005). "Target housing" is generally defined as any housing constructed prior to 1978. 40 C.F.R. § 745.103. A seller or lesser who knowingly violates these requirements may be liable to the purchaser or lessee in a civil action for "3 times the amount of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3).

In order to state a claim for relief under the RLBP Hazard Reduction Act, a plaintiff must first establish that: (1) she was a lessee; (2) Defendants were lessors who failed to make the proper disclosures; (3) the leased property was target housing, i.e., constructed prior to 1978; and (4) the lease contract was signed after the regulatory effective dates (1996). *G.M.M. v. Kimpson*, 92 F.Supp.3d 53, 72 (E.D.N.Y. 2015); *Kaye v. Acme Investments, Inc*., 2008 WL 5188712, at *3 (E.D. Mich. Dec. 8, 2008). Once a technical violation of the statute has been established, a plaintiff "must show actual, non-speculative damages" flowing from lead exposure in order to recover a monetary award. *Kaye*, 2008 WL 5188712, at *3 (dismissing RLBP Hazard Reduction Act claim for failure to show damages resulting from a technical violation of the statute); *Christian v. Warwick Realty, LLC*, 2014 WL 2434626, at *4 (D.R.I. May 29, 2014) (noting that the Act requires that a claimant demonstrate "actual damage" stemming from "lead exposure or the failure to disclose or . . . the failure to warn about the risks of lead poisoning"). The plaintiff must also prove that the defendant's misconduct is the proximate cause of any claimed injuries.

*Id.* (citing *Chires v. Cumulus Broadcasting, LLC*, 543 F.Supp.2d 712, 721 (E.D. Mich. 2008)). *See also Kearney v. Elias*, 2008 WL 3502116, at *6 (D.N.H. Aug. 11, 2008) ("A causal relationship with the defendant's conduct" is required to obtain damages under the RLBP Hazard Reduction Act).

Assuming, as the evidence suggests, that Gary and Connie Bentz technically violated the Act by failing to provide her with required disclosures and pamphlets, Plaintiff has nevertheless failed to adduce sufficient evidence to survive summary judgment with respect to causation and damages. As an initial matter, Plaintiff's own deposition testimony indicates that she would not have done anything differently had she been given the requisite disclosures:

> Q:      What would you have done differently if you had received a pamphlet?
>
> A:      I would have had it. I don't know. I don't know what I would have done differently. I would have –
>
> Q:      Would you still have lived there?
>
> A:      Probably. I got a pamphlet from the apartment I moved in now –
>
> Q:      So the apartment you moved in now –
>
> A:      -- and I live there.
>
> Q:      So the apartment you live in now was built before 1978?
>
> A:      Obviously. They attached a pamphlet to the lease . . .

Docket No. 277-2 at 162-63.

Moreover, as previously discussed, Plaintiff's laboratory results indicated that the level of lead in her blood (BLL) was within normal limits. Docket No. 277-3 at 16. Defendant has also submitted an expert report from Dr. Hung K. Cheung who reviewed Plaintiff's medical records and noted that (1) Plaintiff's blood test did not reveal elevated levels of lead, and (2) Plaintiff's

symptoms were not indicative of any identifiable or recognizable lead-based disease. *Id*. at 33. Plaintiff has failed to submit any expert testimony to rebut these findings. Plaintiff cannot create a material issue of fact as to these complex issues by relying exclusively on her own lay testimony. *Heller*, 167 F.3d at 153. Her claim based on the RLBP Hazard Reduction Act must be dismissed.

### D. Private Nuisance (Count V)

Pennsylvania has adopted the Restatement (Second) of Torts approach for determining the existence of a private nuisance. *Tiongco v. Southwestern Energy Production Co*., 2016 WL 6039130, at *3 (M.D. Pa. Oct. 14, 2016). Pursuant to that approach, a person is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (1) intentional and unreasonable or (2) unintentional and otherwise actionable as negligent or reckless conduct, or for abnormally dangerous conditions or activities. *Karpiak v. Russo*, 676 A.2d 270, 272 (Pa. Super. 1996) (quoting Restatement (Second) of Torts § 822 (1977)).

For an invasion to be actionable, it must cause "significant harm," rather than "slight inconvenience or petty annoyance." *Id*. Harm is "significant" when a "normal person[] living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable." *Umphred v. VP Auto Sales & Salvage, Inc*., 2015 WL 6965725, at *8 (Pa. Super. June 24, 2015) (quoting Restatement (Second) of Torts § 821F cmt. d)).

Defendant addresses this claim only briefly in its motion for summary judgment, arguing that Plaintiff cannot establish that her use and enjoyment of her apartment was significantly harmed by the presence of mold and mold dust without expert testimony. This is true with respect to any of Plaintiff's claims that depend on the presence of lead or *toxic* mold, such as her

medical injuries. As discussed above, a lay jury cannot determine, without expert assistance, whether a particular speck of paint contains lead, a particular type of mold is toxic, or whether exposure to either of those substances caused the manifestation of any particular medical symptoms.

However, expert testimony is not required for a jury to consider the simpler question of whether mold and water existed in the apartment in quantities that would interfere with a normal person's enjoyment of that property.[3] Plaintiff has testified that her apartment was routinely infiltrated by mold due to a broken standpipe that continuously dripped water into the apartment. She further testified that she was forced to clean and abate that mold on her own because the Defendants refused to do so after being informed of the issue. She has submitted pictures and videos in support of her testimony. *See* ECF No. 57. Finally, she testified that Gary Bentz swept mold and dust particles into her apartment's ventilation system on one occasion, forcing her to forego use of her air conditioning during the heat of summer. With respect to damages, she testified that she had to pay to have the mold cleaned on her own and was forced to move out of the apartment and into hotels and storage lockers to escape the offending particles. These actions are all firmly within the scope of lay testimony. As such, Defendant's motion for summary judgment will be denied as to Plaintiff's private nuisance claim with respect to her *non-medical* damages.

### E. Breach of Contract (Count VI)

To prevail on a claim for breach of a contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant

---

[3] To be completely clear, the Court is making the following distinction: while expert testimony is required for Plaintiff to establish that a harmful or toxic type of mold was present in her apartment and caused her to experience specific medical symptoms, expert testimony is *not* required for a jury to consider whether some sort of mold was generally present in the apartment in a quantity that would render the apartment offensive or uninhabitable, regardless of any specific health threat.

damages. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247 (Pa. 2016). In the instant case, the pertinent portion of the applicable lease agreement states:

> If the demised premises, or any part thereof, shall be partially damaged by fire or other casualty not due to Lessee's negligence or willful act or that of his employee, family, agent, or visitor, the premises shall be promptly repaired by Lessor and there shall be an abatement of rent corresponding with the time during which, and the extent to which, the lease premises may have been untenantable . . .

ECF No. 272-3 ¶ 9. Plaintiff contends that Defendants violated this provision by failing to promptly repair a broken drain pipe directly outside of her window that continuously leaked into the apartment, causing mold to form.

In their summary judgment motion, Defendants again contend that Plaintiff cannot support her claim without expert testimony. ECF No. 278 at 6. They also suggest that Plaintiff cannot prevail because the undisputed evidence indicates that she voluntarily moved out of the apartment on the last date of her lease. *Id*.

We have already held that Plaintiff cannot seek damages for any illness she claims to have experienced as the result of mold and lead in the apartment. However, as with her private nuisance claim, Plaintiff is also seeking damages that are within the province of a jury to consider without the benefit of expert testimony. Plaintiff testified that she notified Gary Bentz of a broken standpipe outside of her window that dripped into the apartment and caused mold to form. She has also testified that Defendants took no steps to fix the standpipe or otherwise abate the proliferation of mold. A jury may consider this evidence, as well as the pictures taken by Plaintiff, and determine whether the alleged defects rendered the apartment "untenantable" such that Plaintiff should have been entitled to an abatement of rent, as specified in the contract.

Consequently, summary judgment will be denied as to this portion of Plaintiff's breach of contract claim.

### F. Breach of Implied Warranty of Habitability and Constructive Eviction (Count VII)

Plaintiff's final claim alleges that Defendants breached the implied warranty of habitability in a manner that resulted in a constructive eviction. In Pennsylvania, it is well-settled that landlords owe a duty to protect tenants from injury or loss arising out of a negligent failure to maintain a rental property in a safe condition. *Field v. Merriam*, 485 A.2d 742, 745 (Pa. 1984). The implied warranty is "designed to ensure that a landlord will provide facilities and services vital to the life, health, and safety of the tenant and to the use of the premises for residential purposes." *Pugh v. Holmes*, 405 A.2d 897, 905-06 (Pa. 1979). To assert a breach of the implied warranty of habitability, a tenant must prove he or she gave notice to the landlord of the defect or condition, that he (the landlord) had a reasonable opportunity to make the necessary repairs, and that he failed to do so." *Id.*

Defendants' argument with respect to this claim is brief and conclusory:

> Plaintiff's last claim is for recovery under the implied warranty of habitability. Simply put, Plaintiff has not shown that 226 East End Avenue was uninhabitable. Plaintiff's Third Amended Complaint alleged her proofs "show visible mold" along with "lead exposure of the walls." See Exhibit "A" at ¶ 51. Plaintiff is required to support such allegations with an expert report.

ECF No. 278 at 7.

"[A] breach of the implied warranty of habitability [is] a contract claim for which only contract remedies are available and *not* a tort claim for which personal injury damages are available." *Echeverria v. Holley*, 142 A.3d 29, 35 (Pa. Super. 2016) (emphasis in original). As such, a breach of the implied warranty of habitability "entitles claimants only to traditional

contract damages such as termination of the obligation to pay rent where the tenant surrenders possession of the premises, rent abatement where the tenant remains in possession, the remedy of 'repair and deduct,' and specific performance." *Id*. (citing *Pugh*, 405 A.2d at 907-08). Plaintiff is explicitly seeking two of these remedies: an abatement in rent for the time that she remained in possession, and "repair and deduct" damages for having to remediate and abate the mold and water damage on her own. Plaintiff is entirely capable of testifying as to the existence and extent of these conditions and the amounts that she spent to remediate them, as well as to present photographic and video evidence of the alleged conditions.[4] Defendants Motion for Summary Judgment will be denied as to Count VII of the Amended Complaint.

### G. Defendant C.A. Bentz, LLC's Motion for Summary Judgment

Defendant C.A. Bentz, LLC ("CA Bentz") moves for summary judgment on the independent ground that it did not exist as a legal entity at the time of the events giving rise to this lawsuit. Pursuant to Pennsylvania law, "a limited liability company is organized upon the filing of the certificate of organization" with the Pennsylvania Department of State. 15 P.S. § 8914(b); *Clarity Software, LLC v. Financial Independence Group, LLC*, 51 F.Supp.3d 577, 589 (W.D. Pa. 2014). CA Bentz has submitted uncontradicted evidence that the paperwork required to form the LLC was not filed with the Pennsylvania Department of State until January 22, 2015. *See* ECF No. 267-3. Because CA Bentz did not exist as a legal entity at the time of the events giving rise to Plaintiff's claims, summary judgment in favor of CA Bentz is warranted as to all claims. *See Clarity*, 51 F.Supp.3d at 584-86 (holding that an LLC cannot assert claims arising prior to the date on which the LLC filed the requisite formation paperwork with the Pennsylvania

---

[4] As previously discussed, Plaintiff has failed to provide any expert evidence to establish the presence of lead. In the absence of such evidence, a jury may not consider any aspect of her breach of the implied warranty of habitability claim that relies on the existence of lead paint. Plaintiff's claim at trial will be limited to the presence of mold and water.

Department of State, despite that the LLC may have been doing business prior to that date based on a mistaken belief that formation papers had already been filed).

### H.  Plaintiff's Cross-Motion for Summary Judgment

Finally, Plaintiff has filed a "Counter Motion for Summary Judgment" (Docket No. 285) in which she requests judgment in her favor as to all claims.  Although framed as an independent motion for summary judgment, Plaintiff's motion can be more appropriately characterized as a response to Gary and Connie Bentz's motion for summary judgment.  Rather than cite to any pertinent caselaw or specific evidence in the record supporting her own request for summary judgment, Plaintiff's motion primarily responds to arguments made in the Defendants' summary judgment motions and airs general grievances concerning the state of her medical records, the need for expert witnesses on causation, and accusations of spoliation.  *See*, *generally*, ECF No. 286.  In any event, as discussed above, there are ample issues of material fact concerning each of the remaining claims in this action.  Plaintiff's Cross-Motion for Summary Judgment will be denied.

### I.  Supplemental Jurisdiction

"Federal courts are of limited jurisdiction, and may only decide cases consistent with the authority afforded by the Constitution or statutes of the United States."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994).  Thus, "[w]hen the claims over which a district court has original jurisdiction are resolved before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."  *Neelu Pal v. Jersey City Med. Ctr.*, -- F. App'x --, 2016 WL 3774060, at *4 n. 6 (3d Cir. July 15, 2016) (emphasis in original) (internal quotation marks and citations omitted); *see also Yue Yu v. McGrath*, 597 F.

App'x 62, 68 (3d Cir. 2014) (affirming the district court's decision to dismiss "all of the remaining state and common law claims after awarding summary judgment to [d]efendants on all of the federal claims over which it had original jurisdiction"). "Importantly, pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." *Yue Yu*, 597 F. App'x at 68.

As each of Plaintiff's remaining claims are entirely grounded in state law, the Court will decline to exercise supplemental jurisdiction over those claims. *Id*. at 68; *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction"). Consequently, Plaintiff's private nuisance, breach of contract, and implied warranty of habitability claims will each be dismissed, without prejudice to her refiling the same in state court.

## VI. CONCLUSION

For all of the foregoing reasons, Defendants Gary and Connie Bentz's Motion for Summary Judgment (Docket No. 277) is GRANTED in part and DENIED in part. Judgment will be entered in favor of the Bentz Defendants with respect to Counts I, II, and III. Judgment will be denied as to Counts V, VI and VII. Instead, Counts V, VI and VII will be dismissed WITHOUT PREJUDICE to Plaintiff refiling those claims in state court.

C.A. Bentz LLC's Motion for Summary Judgment (Docket No. 267) will be GRANTED. Judgment will be entered in favor of C.A. Bentz and against Plaintiff with respect to all counts of the Amended Complaint.

Plaintiff's Cross-Motion for Summary Judgment (Docket No. 285) will be denied.

An appropriate order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:    December 22, 2016

cc/ecf: All counsel of record.

Jacquelyn B. N'Jai
njai.jacquelynb@gmail.com
and
P.O. Box 10133
Pittsburgh, PA 15232
(regular mail)